904

EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE BAYAMÓN, HON. RAFAEL L. YDRACH YORDÁN, JUEZ, recurrido; MANUEL SIFREDO GONZÁLEZ, interventor.

Números 2577, 2578 y 2579.

*Sometidos:* 31 de marzo de 1960. *Resueltos:* 28 de junio de 1960.

*Hon. Secretario de Justicia Hiram R. Cancio, J. B. Fernández Badillo, Procurador General,* y *Héctor Orlandi Gómez, Procurador General Auxiliar,* abogados del peticionario; *Celestino Iriarte* y *Félix Ochoteco, Jr.,* abogados del interventor.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

Ante el Tribunal Superior, Sala de Bayamón, el ministerio fiscal formuló tres acusaciones contra Manuel Sifredo González por infracción a la sec. 6 de la Ley de Bolita —núm. 220 de 15 de mayo de 1948, 33 L.P.R.A. sec. 1252. Cada una imputaba la comisión de un delito calificado como menos grave (misdemeanor) por el fiscal. En efecto, se alegó que el acusado en tres ocasiones distintas " . . . en un taller de imprenta de su propiedad, imprimió libretas destinadas para el juego ilegal del bolipool . . ." y que dicho material " . . . podía utilizarse y estaba conectado y relacionado con el juego ilegal del bolipool". Al comenzar el juicio el 15 de mayo de 1959, el acusado solicitó el sobreseimiento del proceso. Invocó para ello la interpretación que reiteradamente la Sala de Bayamón había dado al art. 448 del Código de Enjuiciamiento Criminal, a saber: que el término de sesenta días que allí se dispone para presentar la acusación *"cuando una persona haya sido detenida para responder (held to answer) por la comisión de un delito"*, se cuenta a partir del momento en que un agente de orden público autorizado para realizar arrestos ha visto a la persona inculpada cometer el acto delictivo por el cual se le acusa. Discutida la cuestión por ambas partes, el tribunal de instancia mantuvo su criterio sobre el concepto de "held to answer" y dictó sentencia ordenando el sobreseimiento y archivo de las tres acusaciones.

Contra esa sentencia el Secretario de Justicia no interpuso de inmediato recurso de certiorari ante este Tribunal Supremo. Ya anteriormente habíamos expedido 62 mandamientos para revisar por certiorari otros casos idénticos pro-

venientes de la misma sala del Tribunal Superior. Y el recurso que ponía a prueba la teoría del *"held to answer"* adoptada por el magistrado de instancia había quedado finalmente sometido a este Tribunal Supremo cuatro días antes, es decir, el 11 de mayo de 1959. Nuestro fallo en este último caso, como es muy sabido, se dictó el 8 de julio del mismo año. *Pueblo* v. *Tribunal Superior* (María Figueroa, interventora), 81 D.P.R. 455. Allí resolvimos que una persona no está "detenida para responder por la comisión de un delito público" por el mero hecho de que cometa el acto delictivo en presencia de un agente de orden público autorizado para realizar arrestos. Por tanto, con independencia de las circunstancias que más adelante hemos de considerar, la sentencia pronunciada en el caso de Manuel Sifredo González tiene su origen en una interpretación del art. 448 que rechazamos por ser "contraria a la letra, la historia y la lógica del precepto y al criterio invariable de este Tribunal expresado en más de treinta sentencias durante más de medio siglo." Ibid, pág. 458. Adviértase que cuando recayó nuestro fallo en el caso normativo de María Figueroa, habían transcurrido 53 días desde el 15 de mayo de 1959, fecha en que se dictó la sentencia de sobreseimiento aquí impugnada.

Con esto desembocamos en lo más importante: para corregir o rectificar ese error, en vez de acudir mediante certiorari ante este Tribunal Supremo, el ministerio público solicitó el 6 de agosto de 1959 que el tribunal de instancia reconsiderara su sentencia de sobreseimiento y ordenara la reinstalación de los casos contra Manuel Sifredo González. Asimismo solicitó un señalamiento para juicio dentro del término más breve posible. Cinco días más tarde, el 11 de agosto de 1959, sin celebrar audiencia para oír al inculpado, la Sala de Bayamón accedió íntegramente a la solicitud formulada por el fiscal. Al ser citado de nuevo para juicio el 24 de agosto de 1959, el procesado pidió que se dejara sin efecto la orden o providencia mandando a continuar las causas. Se procedió entonces a informar oralmente sobre las

cuestiones suscitadas. Luego la defensa y el fiscal sometieron sus alegatos. Finalmente, el 28 de septiembre de 1959, el magistrado de instancia dejó sin efecto la anterior reinstalación de las causas y en definitiva ordenó el archivo de las mismas. En su parte dispositiva la última resolución del tribunal a quo consigna lo siguiente: *"Siendo nuestras resoluciones de archivo dictadas en 15 de mayo de 1959 firmes, inapelables e imposibles de revisarse por certiorari, como hemos visto, se deniega la reinstalación de estas causas solicitada por el ministerio público y se mantienen en toda su eficacia los archivos originalmente decretados."* (Bastardillas nuestras.) Dicha resolución fue notificada al fiscal de distrito el 29 de septiembre de 1959.

Es preciso señalar que idéntico pronunciamiento se hizo en otras 174 causas criminales pendientes ante dicha Sala del Tribunal Superior. En todas ellas el ministerio fiscal había seguido el mismo trámite que en el caso de autos para dejar sin efecto sobreseimientos decretados antes de julio 8 de 1959. Y el magistrado de instancia, luego de reabrirlas y ordenar su señalamiento para juicio, volvió a archivarlas por los mismos fundamentos que expuso en el caso de González. Bajo tales circunstancias que son en realidad extraordinarias, el Secretario de Justicia presentó treinta y siete días después (el 5 de noviembre de 1959) una solicitud de certiorari encaminada a revisar la sentencia de sobreseimiento y archivo que se dictó en el caso de autos el 15 de mayo de 1959. Expedimos el mandamiento y el recurso quedó finalmente sometido a este Tribunal el 31 de marzo de 1960.

La controversia ante nos está escuetamente limitada a determinar si, no obstante haber transcurrido cinco meses y veinte días desde el sobreseimiento inicial del proceso hasta la fecha en que se presentó la solicitud de certiorari, cabe todavía revisar la sentencia recaída y anular el archivo decretado. En otras palabras, la única cuestión planteada es de índole procesal: ¿procede denegar el recurso por haber

sido solicitado tardíamente? El interventor sostiene en síntesis (1) que la petición de certiorari en causas criminales debe radicarse dentro del término en que procedería una apelación, ya por el acusado o por el Pueblo o a lo sumo dentro de treinta días a contar de la fecha en que se dictó el pronunciamiento impugnado; (2) que el tribunal de instancia carecía de jurisdicción para reconsiderar su sentencia, recayendo sobre el Estado la responsabilidad de haber acudido a ese trámite erróneo que retardó la radicación de la solicitud de certiorari; y (3) que la dilación o demora en radicar la solicitud de certiorari fue en todo caso indebida e injustificada, por lo cual debe anularse el auto librado. El Secretario de Justicia sostiene, por su parte, una posición diametralmente opuesta. Primero: que no existe un término prescriptivo fijo e invariable para incoar el recurso de certiorari en causas criminales, sino un término razonable cuya duración depende de los méritos y circunstancias de cada caso específico. Segundo: que no se cometió error al pedir la reconsideración de la sentencia al tribunal de instancia, ya que éste tenía facultad para reconsiderarla dentro de un término razonable a contar desde el día en que se dictó. Tercero: que tomando en cuenta los méritos y las circunstancias especiales del caso de autos, no medió demora indebida o injustificada que pueda hacer tardía la petición de certiorari radicada el 5 de noviembre de 1959. Es punto fuera de toda discusión, y no controvertido por el interventor, que en su fondo el sobreseimiento del proceso contra González decretado el 15 de mayo de 1959 no se justifica y constituye un error, según la doctrina sobre el concepto de "detenido para responder por la comisión de un delito" que establecimos el 8 de julio de 1959 al resolver el caso de *Pueblo* v. *Tribunal Superior* (María Figueroa, interventora), *supra*.

 Si examinamos nuestras leyes claramente veremos que nunca se ha previsto en ellas un término procesal para la radicación del certiorari clásico. La ley de marzo 10 de

1904 que implantó en Puerto Rico este método de revisión no señalaba plazo dentro del cual debiera solicitarse el auto. Véase Leyes de 1904, sesión ordinaria, pág. 123. Cuando se redactó el Código de Enjuiciamiento Civil de 1933, incorporando en sus arts. 670, 671 y 672 las disposiciones de la original ley de certiorari, el legislador tampoco fijó límite de tiempo para incoar ese procedimiento de revisión ante los tribunales. Véase 33 L.P.R.A. secs. 3491–3493. Aunque reiteran el poder discrecional del Tribunal Supremo para traer ante sí mediante certiorari cualquier sentencia o resolución del Tribunal Superior, ni la Ley Orgánica de la Judicatura de 1950 (Leyes, pág. 1127) ni la Ley de la Judicatura de 1952 que está vigente (4 L.P.R.A. sec. 1 y sigtes.) alteraron esta situación en lo más mínimo. Nuestras propias Reglas de Procedimiento Civil de 1958 tampoco disponen término alguno. Se limitan a salvar y dejar en vigor los arts. 670 a 672 del Código de Enjuiciamiento Civil de 1933. Véase 33 L.P.R.A., Supl. Acum. 1959, Reglas 1–72. Obsérvese además que en los certioraris especiales la Asamblea Legislativa siempre ha fijado el plazo para incoar el recurso. Lo cual significa, a nuestro juicio, que la omisión en cuanto al certiorari clásico no puede atribuirse a mera inactividad o inercia del legislador.

En realidad, frente al estado actual de la ley, resulta imposible aplicar aquí "por vía de analogía" como sugiere el interventor los términos de 5 y 15 días que prescribe el art. 349 del Código Penal para entablar apelaciones contra providencias y sentencias dictadas en causas criminales, cuando se concede el derecho de apelación al acusado o al fiscal. 34 L.P.R.A. sec. 1076. Tampoco es de aplicación el término de 30 días que para la apelación o revisión de una sentencia dictada en un caso civil fija la Regla 53 de las de Procedimiento Civil de 1958. 32 L.P.R.A., Ap. R. 53. No podemos inventar un término procesal concreto y fatal que no está previsto en la ley, e intercalarlo por *fiat* judicial en el procedimiento de certiorari. Cf. 40 A.L.R. 2d 1381–1389.

Esto explica, sin más, la doctrina equitativa de incuria (*laches*) que nuestra jurisprudencia establece con firmeza: si la demora en solicitar el certiorari es indebida e injustificada, debe denegarse el auto porque la equidad sólo ayuda al diligente y no a quien abandona o descuida sus derechos. Véanse, entre otros, *Hernández* v. *Hutchison*, 20 D.P.R. 517 (1914); *Berríos* v. *Asamblea Municipal*, 30 D.P.R. 414 (1922); *W. J. Cox Co., Inc.* v. *Trigo*, 40 D.P.R. 647 (1930); *Pueblo* v. *Corte*, 44 D.P.R. 703 (1933); *Pueblo* v. *Gaetán*, 46 D.P.R. 632 (1934); y *Corrada* v. *Asamblea Municipal*, 79 D.P.R. 365 (1956). Claro está, no basta el transcurso de un tiempo determinado para que exista lo que se denomina técnicamente incuria o *laches*. Es imprescindible que la conducta negligente del peticionario, al no promover con prontitud y diligencia la expedición del auto, haya causado una demora innecesaria e indebida que de hecho perjudica a las demás personas interesadas. Adviértase que la teoría de *laches* envuelve dos elementos: (1) la dilación injustificada en la presentación del recurso; y (2) el perjuicio que ello pueda ocasionar a otras personas, según las circunstancias. Además hay que considerar el efecto que tendría la concesión o la denegación del auto sobre los intereses privados y sociales en presencia. Cuando la demora no perjudica a nadie o el perjuicio causado es leve, si se le compara con el daño que sufriría el peticionario o el público en caso de no librarse el auto, el lapso de tiempo transcurrido tiene que ser grande para que exista la incuria equitativa. En cambio, aunque la dilación sea relativamente corta, si resulta en detrimento para el interés público o los derechos individuales del acusado, procede denegar el auto a base de la doctrina de *laches*. Sobre todo es preciso tener en cuenta los méritos y demás circunstancias del caso específico, ya que la doctrina de incuria sigue vinculada a la idea fundamental de la equidad: se acude a la "razón" y a la "conciencia" para encontrar soluciones justas, apartándose del rigorismo intransigente de los términos fatales. Cf. *Rodríguez* v. *Tribl.*

*Mpal. y Ramos*, 74 D.P.R. 656 (1953) ; *Mercado* v. *Corte*, 71 D.P.R. 789 (1950) y *Vázquez* v. *Corte*, 52 D.P.R. 257 (1937).(¹)

■■ Aclaremos, antes de proseguir, que la orden o sentencia de sobreseimiento que se impugna en este recurso no es revisable mediante apelación. En efecto, los sobreseimientos decretados al amparo de los incisos 1 y 2 del art. 448 del Código de Enjuiciamiento Criminal no están comprendidos en ninguno ¯de los seis casos taxativamente enumerados en el art. 348 de ese mismo Código. (34 L.P.R.A. sec. 1074.) Ni que decirse tiene, como no existe autorización específica en el citado art. 348, no procede apelación alguna por parte del Estado. Cf. *Pueblo* v. *Nieves*, 63 D.P.R. 532 (1944) y *Pueblo* v. *Tribunal de Distrito y Colón*, 74 D.P.R. 838 (1953). Es cierto que el citado art. 348 dice en su inciso 4 que el ministerio público puede establecer apelación *"de una providencia declarando el sobreseimiento provisional"*. Pero el texto inglés disipa toda posible confusión. Dice como sigue: "An appeal may be taken by the People: . . . 4. *From an order arresting judgment."* (Bastardillas nuestras.) En consecuencia, es de una providencia declarando el "arrest of judgment" bajo los arts. 305 a 308 del Código de Enjuiciamiento Criminal que el ministerio público puede establecer una apelación de acuerdo con dicho inciso 4. Véase *Pueblo* v. *Rivera*, 46 D.P.R. 113 (1934).

Resulta, pues, que no cabe invocar aquí la regla general que sentamos en *Pueblo* v. *Corte*, 60 D.P.R. 222 (1942), refiriéndonos a una resolución o sentencia apelable por el

---

(¹) En el mismo sentido, véanse, Toledo Alamo, El Certiorari Clásico en Puerto Rico, 16 Rev. Jurídica de la U.P.R. 315, 383–86; 2 Pomeroy, *Equity Jurisprudence* (5ª ed.) 169–181; Chafee, Simpson y Maloney, *Cases on Equity* (3ª ed.) 1106–1114; McClintock, *Handbook of the Principles of Equity* (2ª ed.) 71–73; Hanbury, *Modern Equity* (6ª ed.) 57–61; Ferris, *The Law of Extraordinary Legal Remedies* (1926) 201–203; 14 C.J.S., *Certiorari*, secs. 63 y 66; y 10 Calif. Jur. (2d), *Certiorari*, secs. 34, 35 y 56.

fiscal. Allí declaramos que dejando a salvo ciertos casos excepcionales : " . . . el auto de certiorari, por ser un remedio extraordinario, no debe expedirse generalmente cuando exista un remedio adecuado, rápido y eficaz en el curso ordinario de la ley." Y por eso añadimos que en ese caso " . . . siendo apelable la resolución en controversia . . . y siendo el recurso de apelación tan rápido y eficaz a los efectos de este caso como lo es el certiorari, por ese solo motivo podríamos anular el auto expedido." Con toda claridad se ve que la situación en el caso de autos es distinta, ya que la resolución o sentencia decretando el sobreseimiento era inapelable. Cf. *Pueblo* v. *Tribunal Superior*, 81 D.P.R. 763, 770–774 (1960). Por lo mismo, tampoco puede argüirse que estamos frente a un caso en que el fiscal ha perdido el derecho a apelar de una sentencia o providencia dictada en una causa criminal por no haber instado el procedimiento dentro del tiempo que determina la ley. Cf. *Sánchez* v. *Corte*, 60 D.P.R. 957 (1942). Normalmente, cuando existe el remedio de apelación y se deja transcurrir el término jurisdiccional, pero luego se solicita un certiorari, el mero lapso de tiempo basta para demostrar que el peticionario es culpable de incuria o *laches*. Véanse *Sánchez* v. *Corte*, *supra;* y *Puente* v. *Corte*, 61 D.P.R. 674 (1943). Aun así, esa regla general tiene sus excepciones.([2]) Pero todo ello es impertinente aquí.

Sentado esto, nos toca resolver ahora si el peticionario está impedido aquí de obtener el remedio que solicita debido a su propia incuria, o sea, si procede anular el auto librado a base de la doctrina de *laches* cuyo contenido jurí-

---

([2]) Por ejemplo, al dictar nuestro fallo en *Rodríguez* v. *Tribl. Mpal. y Ramos*, 74 D.P.R. 656 (1953), no obstante haber transcurrido el término de apelación, declaramos (a) que allí concurrían circunstancias extraordinarias o especiales, y (b) que éstas justificaban la expedición del certiorari para lograr los fines básicos de la justicia. Cf. también *Vergne* v. *Tribunal Superior*, 77 D.P.R. 22 (1954); *Vázquez* v. *Corte*, 52 D.P.R. 257 (1937); Toledo Alamo, op. cit., 335–338, 348–351, 359 y los casos allí citados.

dico ya hemos analizado. A ese fin resulta imprescindible considerar todos los factores que de hecho intervinieron en la tramitación del recurso sometido. La regla de *laches* nos deja un margen amplio para apreciar las circunstancias del caso específico y para graduar sus consecuencias, aplicando los criterios jurídicos ya apuntados antes, de los cuales ha de depender una decisión objetiva. Aunque nuestro poder discrecional es extenso, no puede confundirse con un mandato arbitrario. Todo lo contrario. La aplicación de la doctrina equitativa de *laches* exige (1) una valoración cabal de los intereses en conflicto, y (2) un análisis de las peculiaridades del caso concreto. A ello pasamos a dar nuestra atención.

La sentencia de sobreseimiento dictada el 15 de mayo de 1959 en el presente caso no constituyó un incidente aislado e inconexo en la administración de la justicia criminal en Puerto Rico. Con anterioridad a esa fecha, durante un período de casi ocho meses consecutivos, la sala de instancia venía decretando el sobreseimiento de un gran número de procesos a base de su interpretación peculiar de la frase "detenido para responder por la comisión de un delito" que aparece en el art. 448 del Código de Enjuiciamiento Criminal. Es bien sabido que la primera de esa larga serie de resoluciones sobreseyendo y archivando causas criminales se dictó el 25 de septiembre de 1958 en el caso por infracción a la Ley de Bebidas contra María Figueroa. A fines de determinar la corrección de dicha resolución, el 31 de octubre de 1958 libramos un auto de certiorari en el caso de Figueroa. No obstante, el tribunal a quo continuó aplicando sin remisión su teoría del *"held to answer"* a todas las causas criminales en su calendario. Mientras tanto el recurso de certiorari en el caso de Figueroa seguía su trámite ante este Tribunal Supremo. El 11 de mayo de 1959, radicados los alegatos y celebrada la vista oral, quedó finalmente sometido a nuestra consideración. Aun así, en la Sala

de instancia se seguían sobreseyendo y archivando casos criminales a base de que "detenido para responder" (*held to answer*) se refiere a la situación en que una persona comete un delito en presencia de un agente de orden público autorizado para realizar arrestos. Prueba de ello es que en el de autos la sentencia de sobreseimiento por tal motivo se dictó precisamente el 15 de mayo de 1959, cuatro días después de quedar sometido ante nos el recurso en el caso de Figueroa. Esta situación anormal se prolongó hasta el 8 de julio de 1959, fecha en que dictamos nuestro fallo en el referido caso de María Figueroa. *Pueblo* v. *Tribunal Superior*, 81 D.P.R. 455.

Adviértase que hasta ese momento habían transcurrido nueve meses y trece días desde el primer sobreseimiento decretado por la Sala de instancia. Durante ese período, como era de esperar, en multitud de casos por infracción a la Ley de Bolita (33 L.P.R.A. sec. 1241 y sigtes.) y a la Ley de Bebidas (13 L.P.R.A. sec. 1741 y sigtes.) los acusados obtuvieron órdenes de sobreseimiento. En la práctica, la teoría de que una persona está *"held to answer"* desde el momento en que un agente de orden público la ve cometer el acto delictivo por el cual se le acusa, resultó aplicable con mayor frecuencia a estas dos categorías de delitos que, según demuestran las estadísticas, constituyen el grueso de la litigación criminal en las salas del Tribunal Superior de Puerto Rico. Basta señalar, para comprobarlo, que en el año judicial 1958–1959 se radicaron en el Tribunal Superior 1652 casos por delitos contra la Ley de Bolita y 1655 casos por infracciones a la Ley de Bebidas. Esto representa un total de 3,307 causas que componen el 37 por ciento de todos los casos criminales radicados en el Tribunal Superior durante ese año judicial. Véase el Séptimo Informe Anual del Director de los Tribunales, 1958–1959, Tabla Núm. 3. No es de extrañar, por tanto, que en la Sala de Bayamón del Tribunal Superior fueran sobreseídos

y archivados 237 casos de bolita y de bebidas desde septiembre 25 de 1958 hasta julio 8 de 1959, todos ellos por el único motivo de la errónea interpretación de la frase "detenido para responder por la comisión de un delito".

¿Qué hizo el ministerio público frente a ese alud de sobreseimientos? Nuestros propios archivos revelan que llegó a radicar 62 solicitudes de certiorari hasta julio 10 de 1959. Claro está, una vez librado el auto de certiorari en el caso de María Figueroa, las distintas peticiones pudieron redactarse en términos más o menos estereotipados. Pero nuestro Reglamento exige siempre que la petición venga ". . . *acompañada de una copia literal de la decisión y de la opinión en que se funda, de existir alguna, y de todas las alegaciones de ambas partes que tuvo ante sí la corte recurrida para llegar a tal decisión".* (4 L.P.R.A., Ap. I, R. 15 c.) A más de esto, todas las solicitudes ". . . *deberán venir acompañadas de tantas copias carbón como partes demandadas haya en la petición, y una copia carbón legible para cada miembro de este Tribunal."* (Ibid., R. 15 d.) La preparación de cientos de esos documentos y su certificación por el Secretario del Tribunal Superior, sin lugar a dudas, tenía que dificultar la radicación de las peticiones de certiorari a medida que la Sala de instancia procedía a decretar más y más sobreseimientos y archivos. Tanto es así, que al recaer nuestra decisión anulando el sobreseimiento en el caso de María Figueroa—el 8 de julio de 1959—quedaban por lo menos 175 casos sobreseídos en que aún no se había logrado presentar la correspondiente petición de certiorari ante este Tribunal Supremo.

Sobre este fondo, importa ahora destacar lo que acaeció en el caso específico de Manuel Sifredo González. Fue en mayo 15 de 1959, repetimos, que se ordenó el sobreseimiento y archivo. Todo indica que el ministerio fiscal prontamente empezó a hacer las diligencias necesarias para incoar un certiorari. Hizo transcribir la acusación, la moción de

archivo y sobreseimiento radicada por el acusado, y la sentencia dictada por la Sala de instancia. Sin embargo, debido a la situación excepcional provocada por el cúmulo de casos criminales sobreseídos, no logró obtener las correspondientes certificaciones del Secretario del Tribunal Superior hasta el 2 de julio de 1959. Seis días más tarde, el 8 de julio, resolvimos el caso normativo de María Figueroa. Como en adición al caso de González había 174 casos más en vía de ser revisados por certiorari, el Secretario de Justicia con razón manifiesta que ". . . el Pueblo entendió que quedaba mejor servida la justicia si solicitaba la reinstalación de los casos que estaban en trámite para ser revisados mediante certiorari, antes que venir ante esta Hon. Superioridad a plantear una cuestión que ya había resuelto en términos categóricos . . . [por lo cual] el 6 de agosto de 1959 se solicitó la reinstalación del caso del aquí interventor y de muchos más que estaban en igual situación." Naturalmente, a esa decisión de pedir la reinstalación de los casos sobreseídos no podía llegarse sin antes examinar y considerar con prudencia diversos factores, incluyendo desde luego la cuestión de si el Tribunal Superior tiene facultad para reconsiderar una sentencia de sobreseimiento dictada en una causa criminal. No nos parece irrazonable explicar de ese modo los 29 días transcurridos entre julio 8 y agosto 6 de 1959.

Ya dijimos más arriba que el 11 de agosto de 1959 la Sala de instancia accedió a la reinstalación solicitada por el ministerio público. Pero, al citársele de nuevo para juicio el 25 de agosto, González pidió que se dejara sin efecto la orden mandando a continuar las causas. Se procedió entonces a informar oralmente sobre las cuestiones suscitadas. Luego la defensa y el fiscal sometieron sus alegatos. Finalmente, el 28 de septiembre de 1959, el Tribunal Superior denegó la reinstalación y mantuvo "en toda su eficacia los archivos originalmente decretados . . ." Esta última re-

solución fue notificada al fiscal de distrito el día 29 de septiembre de 1959. Como igual suerte corrieron todos los demás casos en que el ministerio público había logrado obtener órdenes de reinstalación, el Estado tuvo otra vez que enfrentarse súbitamente con ese cúmulo de pleitos y hacer todas las diligencias necesarias para incoar 175 certioraris ante nos. No es de extrañar, pues, que pasaran 37 días más desde esa fecha hasta la radicación en nuestra secretaría de dichos recursos. En los casos de Manuel Sifredo González la petición de certiorari se presentó el 5 de noviembre de 1959, exactamente cinco meses y veinte días después del sobreseimiento inicial decretado el 15 de mayo de ese mismo año.

Vistos así *todos* los hechos, nos parece innegable que hubo dos causas o motivos principales para el lapso de tiempo que tardó el Estado en radicar la solicitud de certiorari en este caso: (1) la extraordinaria aglomeración de casos que resultaron sobreseídos y archivados por una sola sala del Tribunal Superior en un breve período de tiempo; y (2) la decisión que tomó el ministerio fiscal, al recaer nuestro fallo en el caso de *Figueroa*, de solicitar la reinstalación de los 175 casos sobreseídos en vez de acudir inmediatamente ante nos por certiorari. De la primera causa de tardanza claramente no podemos hacer responsable al Estado. Este hizo, a nuestro juicio, todo cuanto estaba a su alcance para actuar con prontitud en esas circunstancias inusitadas. En cuanto al otro motivo de dilación, tampoco podríamos imputar responsabilidad al Estado si se determina que en el caso de autos el Tribunal Superior tenía facultad para reconsiderar el sobreseimiento y reinstalar las causas, pero que erróneamente se negó a reabrirlas.

Al llegar a este punto, tenemos que referirnos a la resolución que dictó el tribunal de instancia el 28 de septiembre de 1959. Se recordará que allí, en definitiva, se denegó la reconsideración y reinstalación de los casos contra González.

Veamos ahora cuáles fueron los fundamentos aducidos para ello. El magistrado de instancia dictaminó en lo pertinente que:

"Esta decisión nuestra (refiriéndose al sobreseimiento decretado en mayo 15 de 1959) no fue revisada ni intentada su revisión en forma alguna, ya bajo el clásico remedio de apelación o ya invocándose el recurso de certiorari. Es decir, nuestro pronunciamiento ganó condición de *firme,* pues tanto los cinco como los quince días para apelar de resoluciones y sentencias en materia penal expiraron (34 L.P.R.A. 1076). No obstante, el día 6 de agosto de 1959—83 días desde que emitimos nuestra resolución de archivo y 75 días desde que la misma adquirió firmeza—se solicitó la reinstalación de las causas, aduciéndose para ello que el Hon. Tribunal Supremo de Puerto Rico había revocado una resolución nuestra de naturaleza similar en el caso de Pueblo v. Tribunal Superior, núm. 2457.

"Accedimos al pedimento fiscal y la reinstalación fue ordenada en 11 de agosto de 1959. Hoy, no obstante, y luego de atender los reparos del acusado, nos vemos obligados a denegar la reinstalación solicitada. ¿Motivos? Que ciertamente no creemos tener facultad para reinstalar casos archivados por resoluciones ya *firmes.* Es al Ministerio Público a quien corresponde volver a acusar, si es que—al momento de intentar hacerlo—tiene ese poder en ley."

A nuestro juicio esa resolución fue a todas luces errónea. En primer lugar, se funda en una premisa que carece de toda validez, a saber: que la resolución o sentencia ordenando el sobreseimiento era apelable por el fiscal. Ya señalamos que el art. 348 de nuestro Código de Enjuiciamiento Criminal no autoriza ni admite semejante apelación. En segundo lugar, está firmemente resuelto en nuestra jurisprudencia que los tribunales de instancia tienen facultad para reconsiderar y corregir cualquier sentencia pronunciada en una causa criminal, mientras el acusado no haya empezado en alguna forma a cumplir con la misma. Las normas dentro de las cuales puede y debe ejercitarse dicha facultad fueron expuestas con diáfana claridad en *Santiago* v. *Jones,* 74 D.P.R. 617 (1953). Allí declaramos que: "La

facultad de un juez sentenciador para reconsiderar una sentencia impuesta dentro de un proceso criminal, se encuentra restringida por ciertas normas que deben esclarecerse . . . La primera norma es que el sentenciado debe encontrarse todavía bajo la custodia del tribunal sentenciador, sin haber empezado a cumplir ninguna parte de la sentencia original; la segunda norma es que la reconsideración no se produzca a menos que un error en el nombre, en la pena impuesta, o en la aplicación de la ley a los hechos probados en el proceso, justifiquen la reconsideración de la sentencia original; la tercera norma es, que existan ciertas circunstancias que justifiquen la mitigación o la agravación de la sentencia." (Pág. 620.) Obsérvese que esto recoge y amplía la doctrina que ya anteriormente habíamos sentado en *Pueblo* v. *Carbone*, 59 D.P.R. 610 (1941), al resolver que: " . . . las cortes inferiores tienen amplia facultad para reconsiderar sus sentencias [en procesos criminales] antes de que sean ejecutadas, bien a moción de parte o motu proprio, para ajustarlas a la ley, tanto para corregir un error en que hayan podido incurrir al imponerlas como para ajustarlas a cualquier situación de hechos que sean debidamente probados por una u otra parte." (Pág. 619.) Teniendo a la vista dichos principios, no vemos cómo el magistrado de instancia pudo afirmar que "ciertamente no creemos tener facultad para reinstalar casos archivados por resoluciones ya firmes".

Pero hay más. En *Pueblo* v. *Ruiz*, 61 D.P.R. 444 (1943) se decidió una cuestión casi idéntica a la que ahora consideramos. Según la formuláramos allí, era la siguiente: "¿Está facultada una corte municipal para dejar sin efecto una orden de archivo de una denuncia ante ella pendiente y ordenar que la denuncia sea reinstalada y el caso llevado a juicio?" (Pág. 445.) Fallamos que sí. Un análisis hondo y minucioso del punto planteado nos llevó a concluir que, si bien el sobreseimiento de una denuncia o acusación tiene en

general "el efecto legal de poner fin a los procedimientos bajo tal denuncia o acusación, y ni la una ni la otra pueden ser reinstaladas para continuar el proceso de acuerdo con ellas", dicha regla es del todo inaplicable cuando la orden de sobreseimiento está todavía bajo el control del tribunal que la dictó y se determina que procede anularla por motivo de fraude o de la comisión de un error de hecho o de derecho. Por tal razón resolvimos que la ley facultaba a la corte sentenciadora para dejar sin efecto su propia orden de archivo, dictada más de nueve meses antes, y para reinstalar así el caso previamente sobreseído.

Claro está, en el caso de *Ruiz* se anuló la orden de archivo por motivo de un fraude. Pero obviamente el principio jurídico envuelto no quedó restringido a ese supuesto de hechos. Al contrario, por vía de *dictum*, reconocimos que el tribunal sentenciador puede y debe anular un sobreseimiento decretado por motivo de un error de hecho. Y ulteriormente se amplió todavía más esa doctrina al señalar explícitamente el *"error en la aplicación de la ley"* como uno de los motivos que justifican la reconsideración de una sentencia dictada en un proceso criminal. Véase *Santiago* v. *Jones, supra,* 520. Cf. *Ex parte Zacarías y El Pueblo*, 41 D.P.R. 730, 733–734 (1931).

Huelga decir que, como en los casos de Manuel Sifredo González se trata de una sentencia de sobreseimiento bajo el art. 448 del Código de Enjuiciamiento Criminal, no podía existir inhibición constitucional alguna que impidiera la reconsideración por razón de *double jeopardy.* Así, la Sala de instancia tenía control absoluto sobre dicha sentencia de archivo y sobreseimiento con facultad clara e indiscutible para reconsiderarla y mandar a reinstalar los casos. No puede sostenerse, como arguye el interventor, que "la sentencia ordenando el archivo de las causas fue una de ejecución inmediata, o sea, que cuando se solicitó la reconsideración de las mismas, ya habían sido ejecutadas". En realidad no

hay modo de *"ejecutar"* una sentencia de sobreseimiento. Tampoco es posible que el encausado empiece a *"cumplir"* la misma. Por lo demás, nótese que la reconsideración se solicitó dentro de un término razonable, vistas todas las peculiaridades del presente caso. Y por otro lado, se había cometido un "grave error" de derecho al dictar sentencia sobreseyendo y archivando las causas contra González. Esto constituía razón suficiente en ley para dejar sin efecto el sobreseimiento y mandar a reinstalar dichas causas.

De todo lo expuesto podemos ver con irrecusable claridad que no se cometió ningún error al solicitar la reinstalación de los casos contra González en vez de acudir ante nos por certiorari. El ministerio fiscal pudo haber hecho esto último, pero la otra vía también estaba abierta en buena teoría jurídica. Y además ofrecía dos ventajas prácticas: (1) era la más rápida y eficaz para conseguir un pronto señalamiento del juicio; y (2) hubiese evitado una congestión en el calendario de este Tribunal Supremo. Resulta, pues, que el Estado no es responsable de la demora que infortunadamente provocó el trámite de reconsideración. Lejos de ello, esa dilación se debió a los planteamientos que hizo el propio interventor en el tribunal de instancia y que, al prosperar, motivaron la errada resolución de septiembre 28 denegando la reinstalación de los casos y manteniendo "en toda su eficacia los archivos originalmente decretados."

No obstante, el interventor aduce que permitir la revisión mediante certiorari en tales circunstancias menoscabaría o destruiría derechos sustanciales que a él le pertenecen como procesado. Cf. *Pueblo* v. *Tribl. de Distrito y Colón*, 74 D.P.R. 838, 847–848 (1953). Y señala además que en *Pueblo* v. *Gaetán*, 46 D.P.R. 632 (1934) aplicamos la doctrina de *laches* para anular el auto de certiorari librado porque "cuando se radicó la solicitud de certiorari habían transcurrido más de ciento veinte días sin celebrarse juicio [y] no se nos ha dado explicación alguna por la demora."

Nadie ignora que el derecho a juicio rápido no se vulnera (1) si existe "justa causa" para no someter al acusado a juicio en el término de 120 días, o (2) si el acusado expresa o implícitamente renuncia a ese derecho. A poco que se analice la situación que nos confronta en el caso de autos, veremos que existe "justa causa" para no aplicar el término de 120 días estatutario. Más aún: la demora se debe a los propios actos del acusado, por lo cual hay una renuncia implícita del derecho a que el juicio se celebre dentro de ese término de 120 días. Recuérdese que en dos ocasiones se llamaron a juicio las causas contra González: en 15 de mayo de 1958 y en 24 de agosto de 1959. En la primera ocasión el procesado solicitó y obtuvo una orden de sobreseimiento bajo el art. 448 (1) del Código de Enjuiciamiento Criminal. Luego de reinstalarse las causas, al citársele de nuevo para juicio, el acusado consiguió que el tribunal a quo dejara sin efecto dicha reinstalación y ordenara en definitiva el archivo de los casos bajo el citado art. 448 (1). Como se reconoce al Estado el derecho de solicitar la revisión mediante certiorari, es obvio que lo sucedido constituye "justa causa" para interrumpir el término de 120 días estatutarios y comenzar a contar de nuevo cuando se devuelvan los autos al tribunal de instancia, en caso de anularse la resolución o sentencia impugnada. De lo contrario sería un gesto vacío e inútil conceder ese derecho al Estado. Por otra parte, adviértase que fue el propio inculpado quien, conociendo ese derecho del Estado, solicitó y obtuvo un sobreseimiento que en dos ocasiones impidió la celebración del juicio. ¿Podría él beneficiarse ahora de una dilación que resulta principalmente de sus propios actos? Evidentemente, no. En tal situación el acusado renuncia implícitamente a que el juicio se le celebre dentro de los 120 días estatutarios. Cf. *Pueblo* v. *Ruiz*, 61 D.P.R. 444, 447 (1943); *Pueblo* v. *Carrero*, 45 D.P.R. 82 (1933); *The Right to a Speedy Crimi-*

*nal Trial*, 57 Colum. L. Rev. 846, 855–856 (1957) y los casos allí citados. (³)

Esto no significa que se puedan o se deban pasar por alto aquí los criterios de política pública que inspiran la garantía constitucional y estatutaria de un juicio rápido. Al aplicar la doctrina de *laches* para determinar cuándo una petición de certiorari es tardía, es preciso tener presente que toda dilación en promover el recurso perjudica el interés social e individual que se protege mediante el llamado "derecho a juicio rápido". Como indicáramos hace poco, ese interés social e individual es triple: "evitar que se encarcele a una persona por largo tiempo mientras el juicio está pendiente; eliminar rápidamente la ansiedad, la sospecha pública y los daños económicos y morales que produce una acusación criminal que no se dilucida a tiempo; y proveer un juicio mientras la prueba está disponible, en otras palabras, evitar que por motivo del tiempo transcurrido los testigos se dispersen o sus recuerdos del suceso se tornen inciertos." *Pueblo* v. *Tribunal Superior*, 81 D.P.R. 455, 470 (1959). Pero, como ocurre siempre en la organización entera del proceso criminal, hay otros intereses sociales que demandan protección jurídica: el orden y la seguridad general exigen que se cumplan las leyes penales y que existan medios eficaces para enjuiciar a los que, en menosprecio de sus prescripciones, han atentado contra la paz pública. ¿Cómo podemos aquí armonizar, satisfacer y proteger eficazmente esos intereses en pugna? Con sentido justo y humano, tenemos que exigir exactitud y puntualidad al ministerio

---

(³) Lo mismo ocurre, sin duda, cuando el Estado solicita mediante certiorari la revisión de una resolución del Tribunal Superior declarando con lugar (*a*) una excepción perentoria interpuesta por el acusado contra la acusación (Cf. *Pueblo* v. *Tribunal Superior*, 79 D.P.R. 766), o (*b*) una moción para suprimir y eliminar evidencia obtenida por medio de un allanamiento cuya legalidad se impugna (Cf. *Pueblo* v. *Tribunal Superior*, 79 D.P.R. 617), o (*c*) una moción para que se entregue al acusado copia de las declaraciones juradas prestadas en el curso de la investigación fiscal (Cf. *Pueblo* v. *Tribunal Superior*, 80 D.P.R. 702).

público en la promoción del recurso de certiorari. Toda demora irrazonable o indebida, por breve que sea, basta para que exista la incuria equitativa. En cambio, al ministerio fiscal nunca podrá negársele la protección necesaria para cumplir "con su misión de hacer que se observen las leyes penales", si las circunstancias concretas demuestran que ha sido diligente y nunca ha abandonado o descuidado los trámites para incoar el certiorari.

Como ya dijimos más arriba, en el caso de autos no puede imputarse responsabilidad al Estado por las causas o motivos de la tardanza sobrevenida. Esta se debió *primero*, a la inusitada aglomeración de casos sobreseídos por una sola sala del Tribunal Superior en un breve período de tiempo; y *segundo*, al trámite de reinstalación de las causas, que debió prosperar pero fue erróneamente resuelto en contra del Estado. A todo ello contribuyó eficazmente el propio inculpado mediante sus planteamientos en el tribunal de instancia. Dicho en otras palabras: el ministerio público aquí explicó cumplidamente la demora. Esto es, precisamente, lo que separa y distingue el presente caso del que consideramos en *Pueblo* v. *Gaetán*, 46 D.P.R. 632 (1934).(⁴)

 En verdad no vemos cómo puede sostenerse que, si nos negáramos a anular el auto librado en este caso, que-

---

(⁴) Para comprobarlo, basta señalar los hechos ·de *Gaetán* y releer lo que entonces declaramos frente a los mismos. En *Gaetán* la anterior corte municipal sostuvo la excepción perentoria que opuso el acusado contra la denuncia radicada. El Pueblo instó una apelación pero ésta fue archivada por falta de jurisdicción, ya que la orden no era apelable. Como consecuencia, cuatro meses y cinco días más tarde, El Pueblo solicitó y obtuvo un auto de certiorari que expidió la antigua Corte de Distrito. Al revocar la sentencia de la Corte de Distrito, que había anulado la orden ·de la Corte Municipal, dijimos entre otras cosas: "Lo que principalmente nos impresiona es la demora en solicitar un auto de certiorari, en el supuesto de que procediera. *El Gobierno apeló sobre una teoría*

darían menoscabados o destruídos derechos fundamentales del procesado. Al revés, como la petición de certiorari se radicó a tiempo según los límites que fija la doctrina de incuria (*laches*), estamos plenamente convencidos de que sería un serio desacierto anular el auto y dejar en pie las tres sentencias de sobreseimiento pronunciadas. Estas constituyen, repetimos, un "grave error" y son "contrarias a la letra, la historia y la lógica del precepto y al criterio invariable de este Tribunal expresado en más de treinta sentencias durante más de medio siglo." Y el acusado, aquí interventor, así lo admite sin reservas ni ambages. Si dejáramos de anular dichas sentencias en las circunstancias concretas y especiales que presenta el caso de autos, estaríamos proclamando la ineficacia de la justicia penal y concediendo impunidad a un alegado delincuente.

*Se anularán las sentencias recurridas y se devolverán los casos para ulteriores procedimientos compatibles con esta opinión.*

*errónea, pero el apelante Gallardo no era responsable de ello. El hecho fue que después de haberse sostenido una excepción perentoria en la corte municipal, el apelante tenía derecho a que se actuara con prontitud. Es claro que cuando se radicó la solicitud de certiorari habían transcurrido más de ciento veinte días sin celebrarse juicio. Teniendo en cuenta—como podríamos hacerlo—que parte de la demora se debía indirectamente a la excepción perentoria presentada en la corte municipal, no obstante, el acusado tiene derecho a un juicio rápido, y no se nos ha dado explicación alguna por la demora entre la fecha en que fue sostenida la excepción y la de la solicitud de certiorari."* (Pág. 634.) (Bastardillas nuestras.)