# 2008 DTA 113

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE GUAYAMA**
**PANEL XIII**

ROGER LA SALLE
Peticionario

v.

OCTAVIO SEDA Y LA SOCIEDAD DE GANANCIALES
Recurrido

Núm. KLCE-2007-01807

San Juan, Puerto Rico, a 17 de septiembre de 2008

Panel integrado por su Presidente, el Juez Ortiz Carrión,
la Juez Fraticelli Torres y el Juez Rosario Villanueva

Fraticelli Torres, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Los integrantes de la sucesión de Roger La Salle nos solicitan que expidamos el auto de *certiorari* y revoquemos la resolución del Tribunal de Primera Instancia, Sala Superior de Guayama, que denegó su moción de relevo de sentencia, aun cuando el Tribunal *a quo* dictó la sentencia en rebeldía sin haber notificado adecuadamente a todas las partes indispensables del pleito, lo que los privó del debido proceso de ley y de su día en corte.

La parte peticionaria también presentó una moción en auxilio de nuestra jurisdicción y nos solicitó la paralización de los procedimientos en el Tribunal de Primera Instancia porque la parte recurrida, Octavio Seda y otros, presentó una moción sobre ejecución de sentencia y solicitó permiso para anotar un embargo y una prohibición de enajenar y la ejecución de una propiedad inmueble perteneciente a la sucesión La Salle. Declaramos con lugar la solicitud de auxilio de jurisdicción y paralizamos los procedimientos ante el Tribunal de Primera Instancia.

Luego de evaluar los argumentos de las partes y de discernir las dificultades procesales que anteceden el recurso y que justifican la moción de relevo de sentencia en este caso, resolvemos expedir el auto solicitado y revocar la resolución recurrida. Veamos los antecedentes fácticos y procesales que sostienen esta determinación.

## I

El 13 de octubre de 1971, el señor Roger La Salle y su esposa Bella La Salle adquirieron de la Corporación Land Owners Developers, Inc. un solar en la Comunidad Ranchos de Guayama, sita en el barrio Quebrada

Yeguas del Municipio de Salinas. Desde que adquirieron el inmueble, identificado como finca B-11, alegaron los señores La Salle que utilizaron como acceso a su heredad un camino que discurría justo por la colindancia Este de la finca, sobre el cual el señor La Salle construyó una calzada de concreto.

Posteriormente, la señora La Salle falleció y la finca fue inscrita a favor de Roger La Salle con una participación de 60%, correspondiente a su participación de 50% en la sociedad de gananciales constituida con la causante y al 10% como pago de su cuota viudal usufructuaria. El 40% restante se inscribió a nombre de cuatro de sus cinco hijos: Richard Alfred, Dennis André, Thomas Roger y William Peter, todos de apellidos La Salle Marín, en proporción de un diez por ciento para cada uno, como pago de su haber hereditario. [1]

El 18 de noviembre de 2002, el señor Octavio Seda —propietario de la finca B-10 que tiene como colindancia Oeste la finca B-11—, luego de realizar una mensura de su propiedad, hecho que no contó con el aval de sus vecinos colindantes, cerró el aludido acceso a la finca del señor La Salle con una verja de alambre. Ante la negativa del señor Seda de retirar el alambre, el señor La Salle presentó una querella al amparo de la Ley de Controversias y Estados Provisionales de Derecho, Ley 140 de 23 de julio de 1974, 32 L.P.R.A. 2871 *et seq.*, en el Tribunal Municipal de Salinas. Este foro dictó una resolución en la que fijó el estado provisional de derecho de la controversia y ordenó al señor Seda que le permitiera el libre paso al señor La Salle por el camino que transcurre por la colindancia de ambas propiedades, hasta que se resolviera la disputa en sus méritos. Asimismo, ordenó a las partes a reunirse junto con sus agrimensores para que transigieran la cuestión, para lo que les concedió un término de 90 días. Las partes no lograron el convenio *y el señor Seda volvió a cerrar el camino*.

Ante esta actuación del recurrido, el señor La Salle presentó una demanda sobre *injunction* posesorio, solicitud de sentencia declaratoria y daños y perjuicios contra el señor Seda y la sociedad legal de gananciales compuesta con su esposa Rosa María Vega. Adujo en su demanda que ha estado en posesión del único camino por el cual puede entrar a su propiedad desde 1971 hasta la fecha en que el señor Seda lo cercó y le privó de su uso. Además, alegó que las acciones de la parte recurrida dejaron su finca enclavada y que, debido a la topografía montañosa del lugar, el único lugar disponible para lograr acceso a su propiedad es por donde transcurre el camino en disputa. [2] Al contestar la demanda, el señor Seda incoó una reconvención por daños y perjuicios contra su vecino, cuya copia no fue incluida en el apéndice.

El señor La Salle falleció el 25 de julio de 2004. Su representante legal, Lcdo. Erasmo León Rosario, notificó al tribunal recurrido de la muerte de su cliente e informó, por medio de la viuda de La Salle, que se había comunicado con los herederos que residen en los Estados Unidos y que éstos manifestaron preliminarmente su interés en continuar con el pleito.

En febrero de 2005, luego de varios incidentes procesales relativos a la sustitución de parte y a la cuestionable imposición de la fianza de no residentes a los herederos La Salle, algunos de los herederos sostuvieron comunicaciones telefónicas y escritas con el Lcdo. León Rosario y le requirieron que desistiera del caso sin perjuicio. Petición de *certiorari*, Apéndice núm. 17. No obstante, luego de varios trámites procesales generados por la dilación en hacer la sustitución, el 6 de abril de 2005, el Lcdo. León Rosario **presentó la moción de sustitución de parte y una demanda enmendada** en la que declaró que los miembros de la Sucesión de Roger La Salle eran: Janette Lasalde, Tomas Roger Lasalde, Richard Alfred Lasalde, Dennise Lasalde y Jannet Lasalde. **No incluyó copia de la declaratoria de herederos, no incluyó a William Peter Lasalle Marín y los nombres de los anunciados estaban mal escritos**. Apéndices núm. 19 y núm. 20, Petición de *certiorari*. Curiosamente, en algún momento del proceso se incluyó a William y la viuda quedó excluida de las notificaciones de rigor.

El 13 de abril de 2005, el señor Seda contestó la tercera demanda enmendada y reiteró la petición de fianza de no residente que había realizado en octubre de 2004. El tribunal declaró con lugar la solicitud del señor Seda

e impuso a la parte demandante una fianza ascendente a $3,000.00 y le concedió un plazo de 45 días para depositarla. Todavía no se había presentado ante el tribunal *a quo* la declaratoria de herederos.

Luego de ser advertido de la posible desestimación del caso, el 8 de agosto de 2005, el Lcdo. León Rosario presentó una moción en la que explicó que estaba realizando las gestiones para prestar la fianza de no residente a través de la compañía fiadora United Surety & Indemnity Company, a petición de una de las herederas, la señora Janet La Salle Rodríguez. Entonces, solicitó al tribunal que le concediera un plazo adicional para someter los documentos concernientes a la referida fianza.

No obstante, **el 29 de agosto de 2005, el Lcdo. León Rosario presentó la moción de desistimiento sin perjuicio que le habían solicitado previamente algunos de los herederos**. El 30 de agosto de 2008, el tribunal dictó una orden en la que concedió un término de diez días para que las partes se expresaran sobre el desistimiento **con perjuicio**. El 19 de septiembre de 2005, el señor Seda manifestó su posición acerca de la petición de desistimiento y también solicitó que se declarara a la parte peticionaria incursa en temeridad. **[3]** En esa misma moción, la parte demandada solicitó un plazo de treinta días para enmendar la reconvención, pero no surge del expediente que lo hiciera antes del juicio. Apéndice núm. 29, Petición de *certiorari*, a las págs. 119-120.

El 8 de septiembre de 2005, el Lcdo. León Rosario reaccionó en contra del desistimiento **con perjuicio** y objetó que se les impusieran sanciones a los miembros de la sucesión La Salle, cuando aún no se había emitido la declaratoria de herederos. **[4]** Por último, **le recordó al tribunal que si se desestimaba con perjuicio la demanda, quedaría pendiente la reclamación de acceso por tratarse de una finca enclavada**. Apéndice núm. 31, Petición de *certiorari*.

El 9 de septiembre de 2005, el Tribunal de Primera Instancia dictó la sentencia parcial en la que declaró con lugar la solicitud de desistimiento, ordenó el archivo **con perjuicio** de la *"Tercera demanda enmendada"* e impuso a la parte peticionaria el pago de los gastos y costas del procedimiento. El tribunal no notificó directamente a los miembros de la sucesión La Salle que la sanción de la desestimación sería **con perjuicio**, de lo que fue advertido únicamente quien aparecía como su abogado de récord.

El 1ᵐᵒ de junio de 2006, el Lcdo. León Rosario renunció a la representación legal de la sucesión La Salle, porque no tenía comunicación con sus miembros y no estaba en condiciones de continuar representándolos en la reconvención. El 21 de junio de 2006, el tribunal aceptó la renuncia del Lcdo. León Rosario, a pesar de que esta moción no cumplía con los requisitos de la Regla 19 de las Reglas para la Administración del Tribunal de Primera Instancia. 4 L.P.R.A. Ap. II-B, R. 19. En la misma orden concedió a los miembros de la sucesión un término de 30 días para anunciar su nueva representación legal, les advirtió que todavía estaba pendiente la reconvención y los citó a una vista sobre el estado de los procedimientos que se efectuaría el día 5 de septiembre de 2006.

Surge de la faz de la notificación enviada por la Secretaría del Tribunal de Primera Instancia, que la resolución fue notificada sólo a los siguientes miembros de la sucesión La Salle: William La Salle, Dennis La Salle, Richard La Salle y Thomas La Salle, a la dirección de Richard, 8 Plaza Ave., Hudson, NH 03051, aunque viven en estados diferentes, y a Janette D. Peterson a otra dirección. No se envió notificación a la viuda de La Salle, la señora Janet Rodríguez Feliciano. Apéndice núm. 35, Petición de *certiorari*, a la págs. 132-133. **[5]**

El 5 de septiembre de 2006 se celebró la vista sobre el estado de los procedimientos, tal como fue pautada. Ningún miembro de la sucesión ni su representante legal compareció a la audiencia. **El tribunal *a quo* decidió anotarles la rebeldía** y pautar la vista en rebeldía para el 23 de enero de 2007. En la minuta de la vista se consigna que el expediente fue enviado a la unidad de control civil con una nota en la que se solicitaba notificar a los miembros de la sucesión La Salle el día 6 de septiembre de 2006. **La realidad es que la Secretaría del**

**Tribunal de Primera Instancia envió las notificaciones por correo ordinario a las partes residentes fuera de Puerto Rico el 19 de enero de 2007, es decir, 19 semanas después de haberse dictado la orden y a tan sólo cuatro días de la fecha en que se celebraría la vista en rebeldía.** [6] Reiteramos, esta orden no aparece notificada a la viuda de La Salle, la señora Rodríguez Feliciano.

El 23 de enero de 2007, se llevó a cabo la vista en rebeldía a la que no asistió la parte peticionaria. Luego de examinar la prueba documental que presentó el señor Seda, el tribunal declaró con lugar su reconvención y le concedió los $25,000.00 reclamados por sus daños y perjuicios. Además, le impuso a la sucesión La Salle el pago de las costas, gastos y $2,000.00 en honorarios de abogados por la temeridad exhibida en el caso. La sentencia fue dictada y notificada el 23 de febrero de 2007. Fue notificada a William, Dennis, Richard y Thomas La Salle, a la dirección de Richard, 8 Plaza Ave., Hudson, NH 03051, y a Janette D. Peterson a otra dirección. Tampoco se notificó a la señora Rodríguez Feliciano. Este dictamen fue enmendado *nunc pro tunc* el 10 de septiembre próximo para corregir un error en el texto relativo a la fecha de la vista en su fondo. Apéndices núm. 4 y núm. 42, Petición de *certiorari*.

El 20 de agosto de 2007 el Lcdo. Luis E. Miñana Rodríguez-Feo asumió la representación legal de la sucesión y en esa misma fecha presentó una moción de relevo de sentencia al amparo de la Regla 49.2 de Procedimiento Civil. Tal solicitud fue declarada no ha lugar mediante resolución notificada el 2 de noviembre de 2007.

Inconforme con esta última determinación, la sucesión La Salle acude ante nos y plantea que el Tribunal de Primera Instancia abusó de su discreción al no conceder el relevo de sentencia solicitado, ya que no hubo una adecuada sustitución por las partes indispensables en el caso, y al anotar la rebeldía de la parte peticionaria sin haber notificado debidamente a las partes reconvenidas: a unas no se les envió notificación de la vista y a las que residían fuera de Puerto Rico se les notificó a una dirección equivocada o tardíamente. Como último error señala que el Tribunal de Primera Instancia incidió al declarar con lugar la reconvención enmendada sin exponer los hechos que justificaban la concesión del remedio.

La parte recurrida nos pide en su escueto escrito de oposición al *certiorari* que no expidamos el auto solicitado, ya que el peticionario no cumplió con algunos requisitos procesales, entre ellos, que el documento fue erróneamente titulado *certiorari* cuando se debió tramitar como una apelación; el escrito no cumple con los requisitos de forma establecidos en la Regla 34 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, R. 34, y por último, que la parte peticionaria no ha prestado la fianza de no residente requerida por la Regla 69.5 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 69.5.

Veamos el derecho aplicable a las controversias medulares del recurso: primero, el planteamiento jurisdiccional, que se divide entre la inadecuación del recurso y la falta de la fianza de no residentes; y segundo, las causas meritorias que justificaban el relevo del dictamen en rebeldía porque las partes peticionarias no fueron debidamente notificadas de las distintas fases del litigio, en violación del postulado esencial del debido proceso de ley.

## II

Como cuestión de umbral resolvemos que el recurso adecuado para revisar la denegatoria de una moción de relevo de sentencia es el *certiorari*, porque se trata de una determinación post sentencia. Regla 53.1(e) de Procedimiento Civil; Regla 32 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B. Así se ha resuelto reiteradamente por el Tribunal Supremo de Puerto Rico. *Ortiz v. U. Carbide Grafito, Inc.*, 148 D.P.R. 860, 865 (1999); José Cuevas Segarra, I *Tratado de Derecho Procesal Civil* 856 (**Pubslicaciones J.T.S.**, 2000). Es inmeritorio el señalamiento de la parte recurrida sobre este particular.

Sobre la segunda cuestión jurisdiccional presentada por la parte recurrida —la no prestación de la fianza de

no residente por los miembros de la sucesión del demandante original—, resolvemos que tal requerimiento era innecesario para permitir la sustitución de su causante o para presentar la moción de relevo o este recurso. La Regla 69.5 de Procedimiento Civil, dispone en cuanto a la fianza de no residente:

*"Cuando el demandante residiere fuera de Puerto Rico o fuere una corporación extranjera, se le requerirá para que preste fianza para garantizar las costas, gastos y honorarios de abogados en que pudiere ser condenado. Todo procedimiento en el pleito se suspenderá hasta que se preste la fianza, que no será menor de mil (1,000) dólares. El tribunal podrá ordenar que se preste fianza adicional si se demostrare que la fianza original no es garantía suficiente, y se suspenderán los procedimientos en el pleito hasta que se hubiere prestado dicha fianza adicional."*

Transcurridos noventa (90) días desde la notificación de la orden del tribunal para la prestación de la fianza o de la fianza adicional, sin que la misma se hubiere prestado, el tribunal ordenará la desestimación del pleito.

32 L.P.R.A. Ap. III, R. 69.5.

Al interpretar este requerimiento reglamentario, el Tribunal Supremo ha señalado que el propósito principal del precepto es garantizar el pago de las costas, los gastos y los honorarios de abogado que puedan recaer en los pleitos en que el demandante sea una corporación extranjera o una persona natural no residente en Puerto Rico. También tiene como objetivo el desalentar litigios frívolos y carentes de mérito. *Reyes Martínez v. Oriental Fed. Savs. Bank*, 133 D.P.R. 15, 20 (1993); *Pereira v. Reyes de Sims*, 126 D.P.R. 220, 223-24 (1990); *Molina v. C.R.U.V.*, 114 D.P.R. 295, 297 (1983); *Blatt & Udell v. Core Cell*, 110 D.P.R. 142, 146 (1980).

A juzgar por el texto de la Regla, la imposición de la fianza es mandatoria y los tribunales no tienen facultad discrecional para eximir a un demandante no residente o a una corporación extranjera de cumplir con ese criterio ni para fijar su monto en una cuantía menor a la señalada en la Regla, salvo en casos de demostrada indigencia o en las otras circunstancias permitidas por la Regla 69.6, 32 L.P.R.A. Ap. III, R. 69.6. *Molina v. C. R.U.V.*, 114 D.P.R., a la pág. 298. En el caso de autos no se dan estas excepciones.

Ahora bien, el Tribunal Supremo ha eximido la prestación de fianza en otras circunstancias que son de particular pertinencia a este recurso: cuando existe copropiedad sobre bienes sitos en Puerto Rico entre titulares no residentes y residentes, ya que la titularidad de éstos puede cubrir el interés reglamentado; o cuando algunos de varios demandantes residan efectivamente en Puerto Rico. *Vaillant v. Santander*, 147 D.P.R. 338 (1998), y *Sucn. Padrón v. Cayo Norte*, 161 D.P.R. 761 (2004), respectivamente. En este último caso, el tribunal señaló que este *"desarrollo jurisprudencial"* demuestra su inclinación por favorecer que se satisfaga el propósito fundamental de proteger al demandado de los inconvenientes de tener que cobrar las partidas por costas y honorarios de abogados fuera de nuestra jurisdicción y que se faculte el acceso a los tribunales a litigantes con reclamos meritorios.

Nótese que en el pleito de autos los demandantes son los herederos de un causante que era propietario y residente de Puerto Rico al comenzar el pleito; que su interés hereditario recae sobre un inmueble sito en Puerto Rico, que fue heredado por los peticionarios después de comenzado el pleito y éstos lo poseen en una comunidad hereditaria que no ha sido liquidada. Además, la viuda, que es coheredera, reside en Puerto Rico; la acción es de carácter real y afecta directamente la finca en controversia, **cuya ejecución en pública subasta, para cobrar la sentencia recaída por mor de la reconvención, paralizamos. Así de asegurado está el cobro de la sentencia.**

Es obvio que en este caso no procede la fijación de la fianza de no residente como criterio para continuar atendiendo la reclamación de los peticionarios como parte sustituta. Es también inmeritoria la alegación de falta de jurisdicción por no haberse satisfecho una fianza erróneamente impuesta a los peticionarios. Si tal

imposición pecuniaria tuvo el efecto de desalentar el que la parte peticionaria defendiera su causa ante el foro de primera instancia, tal actuación judicial fue equivocada.

Por último, notamos que en este caso hubo una distracción u omisión procesal que justificó que el recurso se presentara el lunes, 3 de diciembre de 2007. Cuando el Tribunal de Primera Instancia recibió la moción de relevo se percató del error en la fecha en la sentencia original y emitió una sentencia enmendada, que notificó con una orden en la que requirió a la parte recurrida que fijara su posición sobre la moción de relevo. Esa orden se notificó el 19 de septiembre siguiente. De inmediato, la parte peticionaria presentó un segundo escrito que tituló moción de reconsideración, en el que repitió los mismos argumentos que en la moción de relevo **que no había sido atendida**. Reiteró su solicitud de relevo de la sentencia, de la anotación de rebeldía y de que se pautara fecha para la nueva conferencia con antelación al juicio. El Juez Administrador atendió la moción de reconsideración, la acogió para efectos de interrumpir los plazos apelativos y la refirió a la jueza a cargo del caso. Aunque esto no era necesario, pues la moción de relevo original no había sido resuelta, por lo que aún el foro de primera instancia tenía jurisdicción sobre el incidente procesal irresoluto, la moción de reconsideración cumplió su propósito.

Habiendo comparecido todos los miembros de la sucesión por medio de un nuevo abogado, que los sometió a la jurisdicción del foro, el argumento de que la sentencia de 23 de febrero de 2007 no fue notificada a todos sus integrantes desapareció, pues la sentencia enmendada lo fue y desde entonces se daban todos por notificados. Eso explica porqué en esa moción de reconsideración se reiteró la solicitud de relevo, para que se entendiera aplicada a la sentencia bien notificada.

El 29 de octubre, con notificación de archivo en autos el 2 de noviembre de 2007, el tribunal resolvió la cuestión con un "*Enterada*, (en alusión al referido del Juez Administrador) *no ha lugar*." Es de esta resolución que se recurre ante nos. El recurso fue oportuno, pues se dispuso así de una moción de reconsideración entretenida y de la solicitud de relevo aún pendiente.

Atendidos los planteamientos jurisdiccionales, veamos los méritos del recurso.

La Regla 45.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 45.1, dispone que procede la anotación de rebeldía cuando una parte contra la cual se solicite un remedio afirmativo por sentencia no cumple con el requisito de contestar la demanda en tiempo hábil, no se defiende en la forma prescrita por la ley, no presenta alegación alguna contra el remedio solicitado o incumple con algún mandato del tribunal. En cualquiera de estas situaciones, el juzgador de hechos puede imponer la rebeldía como sanción, a petición de parte o de oficio. Esta medida tiene el propósito de disuadir a aquellos litigantes que recurren a la dilación o entorpecimiento de los procesos como su estrategia de litigación. *Álamo v. Supermercado Grande, Inc.*, 158 D.P.R. 93, 100 (2002); José A. Cuevas Segarra, II *Tratado de Derecho Procesal Civil* 750 (**Publicaciones J.T.S.**, 2000).

De hecho, este tipo de sanción se cimienta en la obligación de los tribunales de evitar que la adjudicación de las causas se paralice porque una parte opte por detener el proceso de litigación con su falta de diligencia o por su displicencia en la tramitación de los asuntos que le afectan. *Continental Ins. Co. v. Isleta Marina*, 106 D.P.R. 809, 815 (1978). Por tanto, opera como remedio coercitivo contra la parte adversaria cuando, habiéndosele concedido la oportunidad de refutar la reclamación, por su pasividad o temeridad, opta por no defenderse. Incluso, la anotación de la rebeldía es un deber ministerial del secretario del tribunal, una vez se prueba, mediante declaración jurada o de otro modo, que el demandado no ha contestado la demanda en el término requerido. Regla 45.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 45.1. Por esto un tribunal no incurre en error al meramente ordenar la anotación de rebeldía cuando no existe controversia en cuanto a que ha transcurrido el plazo para contestar la demanda, o su prórroga, y que la parte demandada no la ha contestado.

Por otro lado, la Regla 45.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 45.3, dispone que *"[p]or causa*

*justificada, el tribunal podrá dejar sin efecto una anotación de rebeldía, y, cuando se haya dictado sentencia en rebeldía, podrá asimismo dejarla sin efecto de acuerdo con la Regla 49.2".* Es doctrina legal sentada por nuestra jurisprudencia que para pedir el relevo de una sentencia dictada en rebeldía, a tenor de la Regla 45.3, es necesario poner en balance el interés en dar por terminados los pleitos con el interés en que éstos se resuelvan en sus méritos. En estos casos, la balanza debe inclinarse a favor del principio o ideal reiterado por el Tribunal Supremo de que los casos se ventilen en sus méritos. *Banco Central Corp. v. Gelabert Álvarez*, 131 D.P.R. 1005, 1007 (1992); *Neptune Packing v. Wackenhut*, 120 D.P.R. 283, 288-9, 294-4 (1988); *Imp. Vilca v. Hogares Crea*, 118 D.P.R. 679, 686 (1987).

La Regla 49.2 reconoce la facultad inherente de los tribunales para dejar sin efecto alguna sentencia u orden por causa justificada y reabrir la consideración del asunto en litigio. El remedio de reapertura se origina en la propia razón de ser de los foros judiciales: corregir oportunamente sus errores y hacer justicia. Así se *"provee un mecanismo procesal post sentencia para impedir que tecnicismos y sofisticaciones frustren los fines de la justicia".* *Ortiz Serrano v. Ortiz Díaz*, 106 D.P.R. 445, 449 (1977); *Piazza v. Isla del Río, Inc.*, 158 D.P.R. 440, 448 (2003); *Rivera v. Algarín*, 159 D.P.R. 482, 490 (2003).

El dilema valorativo que plantea la moción de relevo de sentencia se describió muy bien en *Southern Const. v. Tribunal Superior*, 87 D.P.R. 903 (1963), al adoptar los factores que en la esfera federal Moore sugería como determinantes en este ejercicio judicial, entre otros, si el remedio se dirige contra una sentencia dictada en rebeldía o por desestimación; si en una situación particular el interés de que los casos se resuelvan por sus méritos sobrepasa el interés de que se respete el orden de los procedimientos y la finalidad de las sentencias; o si existen méritos en la defensa o reclamación que inclinan la balanza a favor de ver el caso en los méritos. El tribunal también debe examinar si hay consideraciones de equidad por las cuales sería injusto no conceder el remedio, así como cualquier otro factor que sea relevante a la validez de la sentencia impugnada. 7 *Moore's Federal Practice*, Sec. 6019, pág. 225 (2da. ed), según citado en *Southern Const. v. Tribunal Superior*, 87 D.P. R., a las págs. 906-907.

Dicho de otro modo, para que proceda el relevo de una sentencia es indispensable que la parte afectada alegue ante el tribunal sentenciador cualquiera de las causas enumeradas en la Regla 49.2, entre ellas, *error, inadvertencia, sorpresa, o negligencia excusable*; *nulidad de la sentencia*; *que no sería equitativo que la sentencia continuara en vigor*; *cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia*; u otra defensa meritoria. Es decir, el remedio de la reapertura no constituye una facultad judicial absoluta. Si la parte demandada cuenta con *buenas defensas* y la reapertura del caso no ocasiona perjuicio alguno a la parte que promovió la anotación y el dictamen en rebeldía, denegar la solicitud de relevo constituiría un claro abuso de discreción. En estos casos, la alegación de una buena defensa debe siempre inclinar la balanza a favor de la vista en los méritos del asunto, a menos que las circunstancias del caso sean de tal naturaleza que revelen un ánimo contumaz o temerario por parte de la parte demandada. *Román Cruz v. Díaz Rifas*, 113 D.P.R. 500, 507 (1982); *J.R.T. v. Missy Mfg. Corp.*, 99 D.P.R. 805, 811 (1971); *Fine Art Wallpaper v. Wolff*, 102 D.P.R. 451, 459 (1974).

Incluso, para dar vigencia a dicha política pública, el Tribunal Supremo de Puerto Rico ha propuesto que se agote el mecanismo de la imposición de sanciones económicas al abogado o a la parte como primera alternativa ante el incumplimiento o la desidia procesal de éstos, pero no privarle de su día en corte. *Amaro González v. First Fed. Savs.*, 132 D.P.R. 1042, 1052 (1993); *Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R., a la pág. 814; *Maldonado v. Srio. de Rec. Naturales*, 113 D.P.R. 494, 498 (1982); *Arce v. Club Gallístico de San Juan*, 105 D. P.R. 305, 308 (1976).

Por lo dicho, la determinación de relevar los efectos de una sentencia está sostenida en la sana discreción del juez de primera instancia, que es quien debe aquilatar la justificación dada por una parte para apartarse del proceder diligente y oportuno en la tramitación de su caso. Incluso, el tribunal debe atemperar el rigor de la

sanción al perjuicio que ha de sufrir cualquiera de las partes por la falta de diligencia o de competencia de su abogado, cuando ello pudiera provocar el abandono o la dejadez en la tramitación de su causa o interés. Si no hay abuso de esa discreción, no podemos sustituir nuestro criterio por el del tribunal que conduce el proceso civil. *Pueblo v. Vega Alvarado*, 121 D.P.R. 282, 287 (1988): *Banco Central Corp. v. Gelabert Alvarez*, 131 D.P.R., a la pág. 1007; Rafael Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil* 303 (San Juan 1997).

Advertimos, además, que aunque la moción de relevo de sentencia no puede ser sustitutiva de los recursos de apelación o de reconsideración, puede concederse aún después de que la sentencia haya advenido final y firme. Lo importante es que en ningún caso se presente después de transcurridos 180 días de adquirir esa firmeza. Este término es fatal. *Figueroa v. Banco de San Juan* 108 D.P.R. 680, 688 (1979); *Olmeda Nazario v. Sueiro Jiménez*, 123 D.P.R. 294, 299 (1989); *Sánchez Ramos v. Troche Toro*, 111 D.P.R. 155, 157 (1981). No obstante, este plazo es inaplicable cuando se refiere a una sentencia nula.

Según la Regla 49.2, puede llevarse una acción independiente de nulidad de sentencia si ésta infringe el debido proceso de ley de alguna de las partes o cuando el tribunal emite la decisión sin haber adquirido jurisdicción sobre la materia o sobre las partes. *Montañez v. Policía de Puerto Rico*, 150 D.P.R. 917, 921-922 (2000); *Rodríguez v. Albizu*, 76 D.P.R. 631, 636-638 (1954).

### III

Procede aplicar estos principios al caso ante nos para determinar si la petición de relevo que consideramos está justificada. En el caso de autos sólo habían discurrido 178 días desde la notificación de la sentencia de 23 de febrero de 2007, enmendada en septiembre de 2007, a los únicos efectos de corregir una fecha. Y esto la hace oportuna, aun si estuviéramos ante un caso ordinario en el que no se cuestionara la validez de la sentencia. Pero en el caso de autos, tanto la sentencia de 9 de septiembre de 2005 como la de 23 de febrero de 2007 adolecen de las mismas fallas procesales, las que plantean la falta de notificación adecuada de algunos procesos esenciales en el litigio a algunas de las partes con derecho a la sustitución.

Lo que debemos examinar, entonces, es si abusó el Tribunal de Primera Instancia de su discreción al negarse a relevar la anotación de rebeldía y la sentencia parcial que declaró con lugar la reconvención, porque se cumplen los criterios requeridos para dejarlas sin efecto y ventilar las dos reclamaciones en sus méritos. Resolvemos que sí en cuanto a estas dos determinaciones.

Los trámites previos y la sentencia parcial que desestimó la tercera demanda enmendada **con perjuicio** no fueron notificados a todas las partes peticionarias directamente, aunque sí a quien fungía como su abogado. Ese dato es esencial porque el promovente de la moción de relevo o de la acción independiente contra la validez de una sentencia no puede ser negligente en el trámite de su caso. Ello le impediría relitigar las cuestiones anteriormente planteadas, por mor de la doctrina de cosa juzgada. *Figueroa v. Banco*, 108 D.P.R. 680, 687 (1979). Como no existe *"límite de tiempo para iniciar una acción independiente de nulidad de sentencia,... la doctrina de incuria se podría aplicar en tales casos."* *Pardo v. Sucesión Stella* 145 D.P.R. 816, 831 (1998).

Se entiende que existe incuria cuando hay *"dejadez o negligencia en el reclamo de un derecho, lo cual en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad"*. *Colón Torres v. A.A.A.*, 143 D.P.R. 119, 124 (1997). La doctrina reclama dos elementos esenciales: (1) la dilación injustificada en la presentación del recurso; y (2) el perjuicio que ello pueda ocasionar a otras personas. *Torres Arzola v. Policía de Puerto Rico*, 117 D.P.R. 204, 209 (1986).

En el caso *Pueblo v. Tribunal Superior,* 81 D.P.R. 904 (1960), se propuso el siguiente esquema de análisis para la satisfacción de la doctrina de incuria:

473

*"Cuando la demora no perjudica a nadie o el perjuicio causado es leve, si se le compara con el daño que sufriría el peticionario o el público en caso de no librarse el auto, el lapso de tiempo transcurrido tiene que ser grande para que exista la incuria equitativa. En cambio, aunque la dilación sea relativamente corta, si resulta en detrimento para el interés público o los derechos individuales del acusado, procede denegar el auto a base de la doctrina de laches."*

*Id.*, a la pág. 912.

Es esencial tener en cuenta los hechos específicos del caso, ya que la doctrina de incuria está atada a *"...la idea fundamental de la equidad; se acude a la 'razón' y a la 'conciencia' para encontrar soluciones justas, apartándose del rigorismo intransigente de los términos fatales. Id.*

Hubo en este caso una serie de entuertos procesales que los abogados y el tribunal no atendieron adecuadamente. Surge de los documentos unidos al expediente judicial que algunos peticionarios quisieron desistir sin perjuicio del proceso, mientras gestionaban la declaratoria de herederos, confiados en que su abogado seguía sus instrucciones y esperanzados en un posible acuerdo extrajudicial con la parte recurrida. Aunque quisieron lidiar con los escollos procesales que confrontaba la sustitución de su causante, ignoraban que su antigua representación legal provocaría la atropellada y definitiva disposición de su causa de acción. No hubo objeción de las partes demandadas a la inclusión de sus comunicaciones en los autos del caso.

Sabemos que el mecanismo de la sustitución de parte en un pleito activo procede cuando uno de los litigantes fallece, se incapacita o cede su interés en la causa de acción. También procede por mera disposición de la ley. Regla 22 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 22. Cuando se trata del fallecimiento de una parte natural y la reclamación no es de las que se extinguen con la muerte, es necesario notificar el fallecimiento al tribunal y a las otras partes dentro del plazo de 30 días, a partir de la fecha en que se adviene en conocimiento del deceso. Desde el momento de la notificación de la muerte, los herederos, los representantes de la parte fallecida o la parte contraria tienen seis meses para solicitar al tribunal la sustitución. De no hacer, debe dictarse el sobreseimiento del caso. Regla 22.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 22:1; Hernández Colón, *Op. Cit.*, pág. 120.

La Regla 16.1 de las de Procedimiento Civil, 32 Ap. III R. 16.1, dispone en lo pertinente que serán partes indispensables en un pleito *"las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, [éstas] se harán partes y se acumularán como demandantes o demandados según corresponda"*. La doctrina y el Tribunal Supremo se han manifestado sobre el alcance de esta Regla y han reconocido que *"este precepto procesal forma parte del esquema de rango constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley"*. *Mun. de San Juan v. Bosque Real, S.E..* 158 D.P.R. 743, 756 (2003). Además, han señalado que el propósito de esta Regla es proteger a la persona ausente de los posibles efectos perjudiciales de un dictamen judicial. Así, cuando a las personas ausentes del pleito no se les ha brindado la oportunidad de salvaguardar unos derechos e intereses que podrían verse afectados, no se le puede imprimir finalidad a la adjudicación de la controversia medular. *Aponte v. Román*, 145 D.P.R. 477, 484 (1998).

Al interpretar las Reglas 16.1 y 16.2, la jurisprudencia ha dado importancia a tres factores: el interés común de todas las partes sobre el asunto medular del pleito, la inmediatez de ese interés ante el litigio en proceso y la necesidad de que la presencia de la parte acumulada garantice un remedio completo a las partes que ya están en el caso. Para determinar si debe acumularse a una parte como indispensable, es necesario, además, evaluar los hechos particulares de cada caso. *Sánchez v. Sánchez*, 154 D.P.R. 645, 677-679 (2001). Véase, además, *Rodríguez v. Moreno*, 135 D.P.R. 623, 627 (1994); *Romero v. S.L.G. Reyes*, res. el 28 de abril de 2005, 164 D.P.R. ___ (2005), **2005 J.T.S. 66.**

Atinente al caso de autos, cuando no hay testamento válido, el título que mejor acredita la sucesión legal es la declaratoria de herederos, la cual se obtiene conforme a lo preceptuado en el Código de Enjuiciamiento Civil, Art. 552, 32 L.P.R.A. sec. 2301. Este trámite garantiza la transmisión de los bienes relictos de las personas fallecidas a sus legítimos herederos, entre ellos, las causas de acción que no se extinguieron con la muerte. *Pueblo v. Flores Betancourt*, 124 D.P.R. 867 (1989); Efraín González Tejera, I *Derecho de Sucesiones: La sucesión intestada* 26 (Editorial de la U.P.R. 2001). No olvidemos que el cónyuge supérstite es heredero forzoso en nuestra jurisdicción y todos los bienes de la herencia están afectos al pago de su usufructo vidual. Código Civil de Puerto Rico, Arts. 761 y 765, 31 L.P.R.A. secs. 2411 y 2415.

Determinado quiénes son los herederos de un litigante fallecido, deben solicitar la sustitución y acudir todos al pleito para lograr el remedio más completo, ya que todos son partes indispensables, como miembros de la comunidad hereditaria. Una vez se concede la sustitución a los herederos, éstos ocupan la misma posición con relación a la causa de acción que la parte sustituida. Tienen, pues, que facilitar la transición y atender el litigio con diligencia. *Lluch v. España Service Sta.*, 117 D.P.R. 729, 750 (1986).

Por lo dicho, resolvemos que no procede el relevo de la sentencia de 9 de septiembre de 2005 porque el reclamo es tardío. Tal dictamen fue generado por diversas circunstancias, entre ellas, la previa petición de desistimiento de la causa de acción, luego de que se presentara una tercera demanda enmendada y dos reconvenciones. Como el fundamento de autorizar el desistimiento con perjuicio fue la tardanza de los herederos en formalizar la sustitución y en prestar la fianza impuesta —dos argumentos estrictamente jurídicos—, debieron los peticionarios acudir en aquél entonces contra tal decisión. Incluso, la codemandada Citibank desistió de su reconvención luego de aceptarse el desistimiento **con perjuicio** de la demanda. Aunque William Peter no fue incluido en la petición de sustitución, luego aparece en la lista de los notificados de esa sentencia. Sólo la viuda, que fue anunciada como sustituta, no fue notificada oportunamente. Dejar sin efecto este dictamen **en este momento, tres años después de dictado**, acarrearía perjuicio para las partes demandadas. Todos los herederos conocían del litigio y debieron ser más proactivos y diligentes en la atención de esta cuestión.

Ahora bien, en cuanto a la anotación de rebeldía respecto a la reconvención que estaba activa y la sentencia de 23 de febrero de 2007, la cosa es distinta. El Tribunal de Primera Instancia incidió al continuar los procedimientos sin que todas las partes fuesen notificadas adecuada y oportunamente de las órdenes y resoluciones emitidas. También surge del expediente que la parte recurrida anunció enmiendas a su reconvención después de la muerte del señor La Salle, en cuyo caso tenía que emplazar a los sustitutos de conformidad con las Reglas de Procedimiento Civil, sobre todo, si se pretendía dictar sentencia contra ellos en rebeldía. No olvidemos que en aquellos casos en que se le haya anotado la rebeldía a una parte por falta de comparecencia, la Regla 67.1 de Procedimiento Civil, dispone en lo pertinente:

*"[...] No será necesario notificar a las partes en rebeldía por falta de comparecencia, excepto que las alegaciones en que se soliciten remedios nuevos o adicionales contra dichas partes, se les notificarán en la forma dispuesta en la Regla 4.4 para diligenciar emplazamientos."*

32 L.P.R.A. Ap. III, R. 67.1

Este asunto de las enmiendas a la reconvención no surge con claridad de los autos, pero ante la posible ausencia de jurisdicción sobre las personas de los sustitutos en cuanto a esa reclamación, el foro *a quo* también debió dar oportunidad a la parte peticionaria para que demostrara esta falla jurisdiccional.

En fin, concluimos que el Tribunal de Primera Instancia abusó de su discreción al no dejar sin efecto la anotación de rebeldía y la sentencia parcial de 23 de febrero de 2007, según enmendada, ante las defensas meritorias que presentó la parte peticionaria. El tribunal debió captar las dificultades jurisdiccionales y proveer

para la adecuada sustitución y notificación a los herederos de todos los procesos judiciales que afectaban sus intereses en el pleito. Disponemos así de los señalamientos de error primero y segundo, pero, nos resta hacer un último señalamiento.

El tribunal recurrido también falló al aceptar la renuncia de representación legal del Lcdo. León Rosario sin que éste consignara en su moción la dirección ni el número de teléfono de cada uno de los miembros de la sucesión a los que representaba y trajo al pleito. La Regla 19 de las Reglas de Administración del Tribunal de Primera Instancia dispone:

*"Cuando un abogado o una abogada que haya comparecido ante un tribunal en representación de un cliente o de una clienta desee renunciar a dicha representación, deberá incluir en la solicitud que presente a esos fines las últimas direcciones, residenciales y postales, tanto suyas como de la parte representada, y los números de teléfono correspondientes a cada cual; consignará que ha notificado a su cliente o a su clienta de su intención de renunciar a su representación; y dará cumplimiento a todo lo requerido por el Canon 20 de los de Ética Profesional."*

4 L.P.R.A. Ap. II-B, R. 2.

No dudamos de que esta omisión contribuyó a que no se les garantizara el debido proceso de ley a todos los miembros de la sucesión que él anunció como sustitutos. El tribunal no le ordenó que corrigiera la aludida falta antes de permitirle la renuncia, pero luego actuó a base de esa información incompleta e imprecisa. Esto impidió que se les notificaran adecuadamente las resoluciones, los señalamientos y las dos sentencias aludidas. Esto demuestra la importancia de no relevar a un abogado de su responsabilidad profesional sin asegurar que los clientes están debidamente advertidos del estatus de los procedimientos y de las consecuencias de la renuncia.

Por la manera en que disponemos de los dos primeros errores, no es necesario discutir el tercer señalamiento.

## IV

Por los fundamentos expresados, se expide el auto solicitado y se revoca la resolución recurrida. Se deja sin efecto la sentencia parcial de 23 de febrero de 2007, según enmendada *nunc pro tunc* el 10 de septiembre de 2007, así como la anotación de rebeldía que permitió este último dictamen. Se ordena la continuación de los procedimientos de conformidad con lo aquí resuelto.

Lo acuerda y manda este Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2008 DTA 113

**1.** Así consta en la Escritura Núm. 28, otorgada el 19 de diciembre de 1987 ante el notario Rafael Elvira Caballero y aclarada por la Escritura Núm. 4, otorgada el 5 de abril de 1988 ante el mismo notario. Apéndice Núm. 6, Petición de *certiorari*, a la pág. 54.

**2.** El 16 de octubre de 2003, el señor La Salle presentó una demanda enmendada en la que incluyó como codemandados a Citibank N.A. y a Habisur, Inc., compañías partícipes en la compraventa de la propiedad y en la mensura y rectificación de cabida realizadas por el señor Seda. Apéndice Núm. 10, Petición de *certiorari*.

**3.** Las codemandadas Citibank N.A. y Habisur reaccionaron por separado a la moción de desistimiento y pidieron la imposición de sanciones a los peticionarios por temeridad, ya que el caso estuvo inactivo por un período de dos años y no

prestaron la fianza de no residente. Apéndice Núm. 28, Petición de *certiorari*.

**4.** La resolución de la declaratoria de herederos se emitió el 24 de octubre de 2005. Posteriormente la señora Rodríguez Feliciano Vda. de La Salle solicitó que se enmendara la resolución y la resolución enmendada se dictó el 12 de enero de 2006 y fue notificada el 18 de enero de 2008. Caso civil núm. JJV2005-0575 (405). Apéndice Núm. 47, Petición de *certiorari*, a la págs. 177-178.

**5.** Advertimos, sin embargo, que hay comunicaciones suscritas por estos tres hermanos en las que ésa es la dirección remitente.

**6.** El 19 de enero de 2007 fue viernes y la vista en rebeldía estaba pautada para el martes siguiente, 23 de enero. La mayoría de los miembros de la sucesión de Roger La Salle residen en EE.UU., por tanto, es evidente que la notificación les llegó luego de haberse efectuado la vista.