Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ERNESTO G. GONZÁLEZ RODRÍGUEZ, COMISIONADO ELECTORAL DEL PARTIDO POPULAR DEMOCRÁTICO ("PPD")<br><br>PETICIONARIO<br><br>V.<br><br>COMISIÓN ESTATAL E ELECCIONES, A TRAVÉS DE SU PRESIDENTA ALTERNA, HON. JESSIKA D. PADILLA RIVERA<br><br>RECURRIDA<br><br>ANÍBAL VEGA BORGES, COMISIONADO ELECTORAL DEL PARTIDO NUEVO PROGRESISTA ("PNP")<br><br>ROBERTO IVÁN APONTE BERRÍOS, COMISIONADO ELECTORAL DEL PARTIDO INDEPENDENTISTA PUERTORRIQUEÑO ("PIP")<br><br>PARTES CON INTERÉS | KLAN202500306 | Apelación acogido como ***Certiorari*** procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2025CV01115<br><br>Sobre: Recurso de Revisión Judicial (Artículo 13.2, Ley 58-2020)<br><br>Resolución CEE-AC-005 |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón[1]

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de mayo de 2025.

Comparece ante nos, el señor Ernesto G. González Rodríguez, en su capacidad oficial como Comisionado Electoral del Partido Popular Democrático (en adelante, Comisionado del PPD o peticionario), quien presenta recurso de *Apelación* —el cual acogemos como un *Certiorari* por ser el mecanismo adecuado para

---

[1] Mediante memorando emitido por el Presidente del Panel VIII, Juez Rivera Colón, el caso de epígrafe fue reasignado a la Jueza Santiago Calderón. Esto, debido a que, el 10 de abril de 2025, el caso fue asignado al Juez Adames Soto, sin embargo, el 19 de mayo de 2025, solicitó que se reasignara el mismo, pues entendía que su posición no era cónsona con la del panel.

la revisión del dictamen recurrido[2]— en el que solicita la revocación de la *Sentencia*[3] emitida y notificada el 21 de marzo de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro recurrido). Mediante dicho dictamen, el TPI declaró *Ha Lugar* las mociones de desestimación presentadas por la Comisión Estatal de Elecciones (CEE o recurrida) y el Comisionado Electoral del Partido Nuevo Progresista (PNP). En consecuencia, desestimó el *Recurso de Revisión Judicial*[4] que presentó el peticionario contra la CEE, con el resultado de impedir la contabilización de votos e impuso al Comisionado del PPD tres mil dólares ($3,000.00) en concepto de honorarios de abogados a favor de la CEE.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, ***confirmamos*** el dictamen recurrido mediante los fundamentos que expondremos a continuación.

## I.

El **6 de diciembre de 2024**, Edwin Velázquez (Director del Escrutinio), convocó a los integrantes de la Mesa Especial compuesta por los Comisionados Alternos de la Unidad 79 a una reunión, con la intención de atender varias situaciones de diversas unidades y precintos[5]. Entre ellas, las situaciones de las papeletas del Precinto 053 del municipio de Lares y del Precinto 032 del municipio de Isabela, las cuales no tenían iniciales o contaban con una sola inicial de los funcionarios.

Así pues, el **21 de diciembre de 2024**, se emitió y notificó una *Certificación de Desacuerdo*[6] de la cual surgió que, de la reunión del 6 de diciembre de 2024, solo se atendió la controversia sobre las papeletas del Precinto 053 del municipio de Lares.

---

[2] Por motivos de economía procesal, conservamos la designación alfanumérica asignada por la Secretaría de este Tribunal.
[3] Apéndice 5 del recurso de *Apelación,* págs. 161-180.
[4] Apéndice 1 del recurso de *Certiorari,* págs. 1-15.
[5] Apéndice 1 del recurso de *Certiorari,* pág. 29.
[6] Apéndice 2 del recurso de *Certiorari,* pág. 76.

El **27 de diciembre de 2024**, la Comisionada Electoral del PPD Karla M. Angleró González (Comisionada Alterna del PPD), presentó el Recurso de Revisión Judicial[7], al amparo del Artículo 13.2 del Código Electoral de 2020[8], sobre una controversia respecto a las iniciales de unas papeletas de voto adelantado a domicilio del Precinto 053 de Lares, luego que la presidenta alterna declarara No Ha Lugar la moción de la Comisionada Alterna del PPD.

El **31 de diciembre de 2024**, <u>concluyó el escrutinio general y se certificaron los resultados.</u>

El **7 enero de 2025**, el peticionario suscribió una *Declaración Jurada*[9] donde declaró que:

> "3. El 6 de diciembre de 2024, estando reunida la Mesa de Alternos, se nos refirió un asunto relacionado al Precinto 032de Isabela. Se trataba de unas papeletas que tenían una sola inicial o quizás ninguna al dorso de esas papeletas. Mi recuerdo que se trataba de sobre 100 papeletas de varias categorías, Incluyendo la papeleta legislativa, que no pudieron ser adjudicadas en la mesa de escrutinio por los funcionarios.
>
> 4. [u]n asunto similar estaba para la consideración de la Presidenta Interina de la Comisión Estatal de Elecciones relacionadas al Precinto 053 de Lares" y que "[a]nte esa situación, los Comisionados(as) Alternos(as), por unanimidad tomamos la decisión de referir este asunto para la atención del pleno de la Comisión hasta que se resolviera el caso que estaba bajo la jurisdicción de la Presidenta Alterna.
>
> 5. Ante esta situación, los Comisionados (as) Alternos (as), por unanimidad tomamos la decisión de referir este asunto para la atención de pleno de la Comisión hasta que se resolviera el caso que estaba bajo la jurisdicción de la Presidenta Alterna".

El **15 de enero de 2025**, los Comisionados Electorales del PPD presentaron por escrito ante la Secretaría de la CEE una solicitud de contabilización de votos sin adjudicar de la Unidad 73 del Precinto 032 del municipio de Isabela. Evaluada tal solicitud, **el 29 de enero de 2025**, la CEE emitió y notificó la *Resolución CEE-AC-25-005*[10] en la cual determinó *No Ha Lugar* la solicitud

---

[7] Apéndice 3 del recurso de *Certiorari*, págs. 132-148.
[8] 16 LPRA sec. 4842.
[9] Apéndice 1 del recurso de *Certiorari*, pág. 23.
[10] Apéndice 1 del recurso de *Certiorari*, págs. 17-19.

presentada por los Comisionados Electorales del PPD, por determinar que no poseía jurisdicción para atender dicho asunto[11]. Asimismo, la CEE en su dictamen, citó la *Sentencia*[12] del foro recurrido respecto a los votos emitidos en Lares.

Inconforme con la determinación, **el 10 de febrero de 2025**, el Comisionado del PPD presentó un *Recurso de Revisión Judicial* contra la CEE y las partes con interés: el PNP y el Comisionado Electoral del Partido Independentista Puertorriqueño (PIP). En este, esbozó la discrepancia entre los electores que firmaron el "*epoll book*" y la cantidad de papeletas adjudicas, para así enfatizar que mas de una tercera parte de las papeletas no fueron adjudicadas. Finalmente, solicitó que se abriera el maletín correspondiente a dicho precinto para poder contabilizar las papeletas restantes.

Por su parte, **el 24 de febrero de 2024**, la CEE presentó una *Moción en Cumplimiento de Orden y Solicitud de Desestimación*[13], en la cual solicitó la desestimación del recurso. En síntesis, alegó que fueron los propios comisionados quienes pospusieron la discusión del Precinto del municipio de Isabela y que las papeletas allí presentes no cumplían con los requisitos de tener al menos dos (2) iniciales, lo que les restaba autenticidad. Igualmente, la recurrida arguyó que el recurso era improcedente y que dicha controversia ya había sido resuelta en un caso similar en el TPI[14]. Finalmente, solicitó que se condenara al peticionario al pago de costas y honorarios de abogados por temeridad.

Por otro lado, **el 27 de febrero de 2025**, el PNP presentó una *Solicitud de Desestimación y Alegato del Comisionado Electoral del PNP*[15]. En esta, levantaron los mismos argumentos de la CEE en

---

[11] *Íd.*

[12] Notificada el 21 de enero de 2025. Apéndice 3 del recurso de *Certiorari*, págs. 132-148.

[13] Apéndice 2 del recurso de *Certiorari*, págs. 60-75.

[14] *Karla Angleró Gonzalez v. CEE,* SJ2024CV11760.

[15] Apéndice 3 del recurso de *Certiorari* págs. 78-105.

cuanto a la falta de iniciales en las papeletas y que dicha controversia ya había sido resuelta en un caso previo[16]. De igual manera, alegó que el recurso fue presentado fuera del término jurisdiccional y que el Comisionado del PPD había actuado con dejadez al no presentarlo oportunamente.

En respuesta, **el 6 de marzo de 2025**, el peticionario sometió su *Réplica a Solicitudes de Desestimación presentadas por la CEE y Comisionado Electoral del PNP*[17] en la cual sostuvo que la CEE, por su inacción, no abrió el maletín ni contó las papeletas de la Unidad 73 del Precinto 032 del municipio de Isabela. Además, indicó que, ante la discrepancia de los electores *"epoll book"* y las papeletas adjudicas en el precinto, era meritoria la apertura del maletín. Por último, reiteró que actuó dentro del término establecido por ley y recalcó la primacía del derecho constitucional al voto.

Evaluadas las posiciones de las partes, **el 21 de marzo de 2025**, el TPI emitió y notificó una *Sentencia*, basada en las doctrinas de academicidad e incuria, en la cual declaró *Ha Lugar* las mociones de desestimación presentadas por la CEE y el PNP. Por ende, desestimó el *Recurso de Revisión Judicial* presentado por el peticionario contra la CEE, impidiendo así la contabilización de votos e imponiendo al Comisionado del PPD tres mil dólares ($3,000.00) en concepto de honorarios de abogados a favor de la CEE.

Inconforme con el dictamen, el 31 de marzo de 2025, el peticionario presentó una *Solicitud de Reconsideración*[18] en la cual esbozó que el foro recurrido aquilató de manera liviana la documentación presentada sobre las discrepancias entre los electores que votaron y las papeletas adjudicadas. De igual modo,

---

[16] *Karla Angleró Gonzalez v. CEE, supra.*
[17] Apéndice 4 del recurso de *Certiorari*, págs. 149-160.
[18] Apéndice 6 del recurso de *Certiorari*, págs. 181-191.

enfatizó la diferencia entre la controversia en el caso de *Karla Angleró Gonzalez v. CEE, supra,* y el caso de autos. Por último, sostuvo la improcedencia de la imposición de honorarios de abogados. En igual fecha, el TPI emitió y notificó una *Resolución*[19] en la cual declaró *No Ha Lugar* la reconsideración.

Insatisfecho aun, el Comisionado del PPD recurre ante esta segunda instancia judicial, y señala la comisión de los siguientes errores, a saber:

> Erró el Tribunal de Primera Instancia al aplicar la doctrina de academicidad e incuria y desestimar el recurso de epígrafe impidiendo la contabilización de votos electorales del Municipio de Isabela, en violación al derecho constitucional al sufragio.

> Erró el Tribunal de Primera Instancia al adjudicar temeridad a la parte recurrente y consecuentemente, haber impuestos honorarios de abogados a favor del CEE.

Por su parte, el 23 de abril de 2025, la recurrida presentó *Oposición a Recurso de Apelación.* En síntesis, arguyó que la controversia del caso de marras no versaba sobre la violación del derecho fundamental al voto, sino del cumplimiento con el derecho vigente que salvaguarda los procedimientos electorales. Asimismo, adujo que el peticionario buscaba re-litigar una controversia atendida y resuelta por el TPI. Finalmente, esbozó que por las propias actuaciones del Comisionado del PPD, la controversia fue atendida en el mes de enero, luego de que culminó el escrutinio.

Así las cosas y con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### -A-

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[20]. En específico, la Regla

---

[19] Apéndice 7 del recurso de *Certiorari,* págs. 192-193.
[20] Véase *Torres González v Zaragoza Meléndez,* 211 DPR 821 (2023); *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR,* 185 DPR 307,

41 del Reglamento del Tribunal de Apelaciones[21] establece que se utilizará el mencionado recurso:

> [P]ara revisar las sentencias del Tribunal de Primera Instancia en revisión de las resoluciones, determinaciones u órdenes que emita la Comisión Estatal de Elecciones por virtud del Art. 13.3 de la Ley Núm. 58-2020, conocida como "Código Electoral de Puerto Rico de 2020", se formalizará mediante la presentación de una solicitud de *certiorari* dentro de los términos y en la forma provista por esta Parte.
> [...]

**-B-**

La Constitución de Puerto Rico garantiza el derecho fundamental al voto[22]. En específico, el texto constitucional sostiene que "[nuestras] leyes garantizarán la expresión de la voluntad del pueblo mediante el sufragio universal, igual, directo y secreto, y protegerán al ciudadano contra toda coacción en el ejercicio de la prerrogativa electoral"[23]. El sufragio se considera una de las prerrogativas más importantes del Pueblo[24].

Acorde las facultades concedidas en virtud del Artículo VI, Sección 6 de nuestra Carta Magna, la Asamblea Legislativa aprobó el Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020, 16 LPRA sec. 4501 *et seq.*, según enmendada (Código Electoral). Bajo el Artículo 3.1 del Código Electoral[25], se creó la CEE la cual esta supuesta a "[g]arantizar que los servicios, procesos y eventos electorales se planifiquen, organicen y realicen con pureza, transparencia, seguridad, certeza, rapidez, accesibilidad y facilidad para los electores de manera costo-eficiente, libre de fraude y coacción; y sin inclinación a ningún grupo o sector ni tendencia ideológica o partidista".

---

337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001).

[21] 4 LPRA Ap. XXII-B, R. 41.

[22] Véase, Art. II, Sec. 2, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 283.

[23] *Íd.*

[24] *Pierluisi et al. v. C.E.E. et al.*, 204 DPR 841, 854 (2020).

[25] 19 LPRA sec.4511.

Es en virtud de lo anterior, que la CEE cuenta con el "Reglamento de Voto Ausente y Voto Adelantado de Primarias 2024 y Elecciones Generales 2024" del 30 de agosto de 2024 (Reglamento de Voto Adelantado) y con el "Manual de Procedimiento para el Voto Adelantado por Correo para las Primarias de Ley y Elecciones Generales de 2024" del 24 de septiembre de 2024 (Manual de Voto Adelantado). En específico, la Sección 6.4 del Reglamento de Voto Adelantado establece el proceso de votación en los colegios de fácil acceso en el domicilio. Particularmente, dispone que [...] "[l]a presencia de al menos dos (2) representantes de partidos políticos distintos, conformarán el balance" [...]. Por su parte, en la Sección 4.8 (8) del Manual de Voto Adelantado establece lo siguiente:

> Luego de este proceso, los (as) Funcionarios (as) de Colegio sacarán las papeletas y procederán a inicialar las mismas en el cuadrante posterior superior izquierdo identificado para estos fines. Luego le pasarán las papeletas a los demás Funcionarios(as) para que la inicialen. Debe Inicialarse con marcador punta fina negro (tipo "Sharpie") por un mínimo de dos (2) integrantes de la Junta de Colegio. Papeletas que no cumplan con este proceso se considerarán nulas.

Así pues, el propósito del requisito antes mencionado es que se pueda asegurar que las papeletas se trabajaron en balance electoral. Esto, debido a que, el balance electoral es el "[m]ecanismo de fiscalización y contrapeso político a implementarse en las Comisiones Locales y sus Organismos Electorales locales para la planificación, coordinación, organización y operación de los eventos electorales dentro de los ciclos que correspondan a cada uno de estos, según se dispone en esta Ley"[26].

-C-

El principio de justiciabilidad requiere que los tribunales limiten su intervención para resolver controversias reales y definidas que afecten las relaciones jurídicas de partes antagónicas u

---

[26] Artículo 2.3 del Código Electoral, 16 LPRA sec. 4503.

opuestas[27]. Conforme a este principio, los tribunales sólo deben evaluar controversias que sean justiciables, es decir, no deben atender controversias hipotéticas, abstractas o ficticias[28].

Siendo esto así, nuestro ordenamiento jurídico reconoce la doctrina de academicidad, la cual es una manifestación del principio de justiciabilidad, pues, aunque se cumplan todos los criterios para que el caso se considere justiciable, si ocurren cambios en los hechos o el derecho durante el trámite judicial que conviertan en ficticia o académica su solución, los tribunales deben abstenerse en intervenir[29]. El propósito de la doctrina de academicidad "es evitar el uso inadecuado de los recursos judiciales y obviar precedentes innecesarios"[30].

Un caso es académico "cuando la cuestión en controversia pierde eficacia ante el paso del tiempo, ya sea porque ocurrieron cambios en los hechos o en el derecho, y la misma se vuelve inexistente"[31]. En otras palabras, un caso es académico cuando se intenta obtener: (1) un fallo sobre una controversia disfrazada o que no existe; o (2) una determinación sobre un derecho antes de que lo hayan reclamado; o (3) o una sentencia sobre un asunto que, al emitirse no podrá tener efectos prácticos sobre una controversia existente[32].

El Tribunal Supremo de Puerto Rico ha reconocido ciertas excepciones en la aplicación del principio de academicidad, esto es: "(1) cuando se plantea ante el foro judicial una cuestión recurrente o susceptible de volver a ocurrir y que tienda a evadir la revisión judicial; (2) cuando la situación de hechos ha sido modificada por el demandado, pero el cambio no aparenta ser permanente, y (3)

---

[27] *Pueblo v. Díaz Alicea*, 204 DPR 472, 481 (2020); *UPR v. Laborde Torres y otros I*, 180 DPR 253, 280 (2010).
[28] *Moreno v. Pres. UPR II*, 178 DPR 969, 973 (2010).
[29] *Torres Santiago v. Depto. Justicia, supra,* pág. 982.
[30] *Moreno v. Pres. UPR II, supra,* págs. 973-974.
[31] *Pueblo v. Diaz Alicea, supra.*
[32] *Torres Santiago v. Depto. Justicia,* supra, pág. 982.

cuando se tornan académicos aspectos de la controversia, pero subsisten consecuencias colaterales vigentes"[33]. Así, al evaluar la doctrina de academicidad y la aplicación de sus excepciones, los Tribunales debemos tomar en consideración "los eventos anteriores, próximos y futuros, y así determinar si la controversia entre las partes sigue viva y subsiste con el tiempo"[34].

**-D-**

Se entiende que existe incuria cuando hay "dejadez o negligencia en el reclamo de un derecho, lo cual en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad"[35]. La doctrina reclama dos elementos esenciales: (1) la dilación injustificada en la presentación del recurso; y (2) el perjuicio que ello pueda ocasionar a otras personas[36]. En *Pueblo v. Tribunal Superior,* 81 DPR 904 (1960), se propuso el siguiente esquema de análisis para la satisfacción de la doctrina de incuria:

> Cuando la demora no perjudica a nadie o el perjuicio causado es leve, si se le compara con el daño que sufriría el peticionario o el público en caso de no librarse el auto, el lapso de tiempo transcurrido tiene que ser grande para que exista la incuria equitativa. En cambio, aunque la dilación sea relativamente corta, si resulta en detrimento para el interés público o los derechos individuales del acusado, procede denegar el auto a base de la doctrina de *laches*[37].

Así, nuestro Tribunal Supremo ha establecido que para aplicar la doctrina de incuria no basta el mero transcurso del tiempo para impedir el ejercicio de la causa de acción, sino que deben evaluarse otras circunstancias antes de decretar la desestimación del recurso. Circunstancias tales como la justificación, si alguna, de la demora incurrida, el perjuicio que ésta acarrea y el efecto sobre intereses privados o públicos involucrados deben ser

---

[33] *Pueblo v. Diaz Alicea, supra.*
[34] *Torres Santiago v. Depto. Justicia, supra,* págs. 982-983; *Pres. del Senado,* 148 DPR 737, 759 (1999).
[35] *Colón Torres v. A.A.A.,* 143 DPR 119, 124 (1997).
[36] *Torres Arzola v. Policía de Puerto Rico,* 117 DPR 204, 209 (1986).
[37] *Íd.,* pág. 912.

considerados[38]. Es esencial tener en cuenta los hechos específicos del caso, ya que la doctrina de incuria está atada a "(...) la idea fundamental de la equidad; se acude a la 'razón' y a la 'conciencia' para encontrar soluciones justas, apartándose del rigorismo intransigente de los términos fatales[39].

**-E-**

La Regla 44.1 (d) de las de Procedimiento Civil[40], rige lo concerniente a la imposición de honorarios de abogado. Pertinente al caso que nos ocupa, la precitada dispone lo siguiente:

> (d) Honorarios de abogado – En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso de que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

Según se desprende de la precitada disposición legal, la imposición o concesión de honorarios de abogado no procede en todos los casos. En nuestro ordenamiento, la concesión de honorarios de abogado depende de que el juzgador determine que una parte o su abogado actuó con temeridad o frivolidad[41]. A modo de excepción, esta norma cede cuando una ley especial lo establezca expresamente[42]. En otras palabras, una determinación previa de temeridad no es necesaria cuando el estatuto especial requiere que el juzgador imponga una suma razonable por honorarios de abogado[43].

Se entiende que una de las partes o su representante legal actúa temerariamente al dilatar los procesos ya instados, crear

---

[38] *Comisión Ciudadanos v. G.P. Real Property*, 173 DPR 998, 1020 (2008).
[39] *Pueblo v. Tribunal Superior, supra*, pág. 912.
[40] 32 LPRA Ap. V, R. 44.1 (d).
[41] *PR Fast Ferries et al. v. AAPP*, 213 DPR 103 (2023).
[42] *Íd.*
[43] *Ortiz Valle v. Panadería Ricomini*, 210 DPR 831, 838-839 (2022).

gestiones evitables, o interponer pleitos frívolos que obliguen a la otra parte a incurrir en gastos innecesarios[44]. Su propósito es penalizar al "[l]itigante perdidoso que, por su obstinación, terquedad, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, los gastos, el trabajo y los inconvenientes de un pleito"[45].

La determinación de temeridad o frivolidad descansa en la discreción del tribunal[46]. Por ende, los tribunales apelativos solo intervendrán con dicha determinación cuando surja un abuso de discreción. *Íd.* Ahora bien, determinada la existencia de temeridad, la imposición de honorarios de abogado es mandatoria[47].

No obstante, no procede la imposición del pago de honorarios de abogado en las siguientes circunstancias: (1) cuando se plantean asuntos complejos y novedosos; (2) cuando se actúa acorde con una apreciación errónea del derecho y no existen precedentes vinculantes sobre el asunto, o (3) cuando exista una discrepancia genuina en cuanto al derecho aplicable a los hechos del caso[48]. En estas situaciones, la temeridad es inexistente[49].

### III.

De acuerdo con el marco jurídico antes reseñado, la Regla 41 del Reglamento del Tribunal de Apelaciones, *supra*, faculta a este foro intermedio apelativo a revisar sentencias del TPI en revisión de resoluciones emitidas por la CEE. El caso de autos versa sobre una *Sentencia* emitida por el TPI en revisión de un recurso judicial dirigido a una resolución de la CEE en la cual se determinó *No Ha Lugar* a la solicitud presentada por el Comisionado Electoral del PPD. Evaluado el recurso ante nuestra consideración, bajo los

---

[44] *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163, 193 (2022).
[45] *Íd., citando a P.R. Oil v. Dayco*, 164 DPR 486, 511-512 (2005).
[46] *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 150 (2022).
[47] *Pérez Rodríguez v. López Rodríguez et al.*, *supra*, a las págs. 192-193.
[48] *SLG González-Figueroa v. SLG et al.*, *supra*, a la pág. 149.
[49] *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 277 (2021).

criterios de la precitada regla, somos de la opinión de que procede la expedición del auto de *Certiorari.* Veamos.

Referente al primer error señalado por el peticionario encontramos que, este se subdivide en tres argumentaciones legales. Adujo que el TPI erró al aplicar la doctrina de academicidad e incuria y desestimar el recurso de epígrafe impidiendo la contabilización de votos electorales del Municipio de Isabela, en violación al derecho constitucional al sufragio.

En primer lugar, el peticionario arguyó que la controversia de las papeletas no era académica. El Comisionado del PPD expuso que, contrario al caso de *Karla Angleró v. CEE, supra,* este no trataba de funcionarios que omitieron iniciales en las papeletas sino sobre la no apertura de un maletín durante el escrutinio.

Ahora bien, no podemos pasar por alto una distinción esencial, y es que, según se desprende de la *Declaración Jurada* del peticionario, el asunto relacionado con las papeletas del municipio de Isabela estuvo expresamente supeditado al caso de Lares, lo cual es confirmado por la determinación de la CEE al señalar que estas compartían las mismas características. Este vínculo deliberado entre ambas controversias no puede ser obviado, pues refleja un reconocimiento implícito por todas las partes de que el criterio decisorio debía ser idéntico. Conceder ahora una solución distinta vulneraría principios elementales de consistencia administrativa y seguridad jurídica. Por tal razón, aun cuando reconocemos la excepción de recurrencia a la doctrina de academicidad, debemos enfatizar que la Revisión Judicial no puede convertirse en un mecanismo para litigar una controversia que pudo y debió plantearse oportunamente.

En segundo lugar, el peticionario adujo que no cometió incuria, pues presentó su revisión judicial tan pronto la controversia fue adjudicada por la CEE. Asimismo, argumentó que, solamente

existía una similitud entre el caso de marras y el caso *Karla Angleró v. CEE, supra.* Dicha similitud surgió de un aspecto temporal, es decir, posterior al escrutinio general.

En el caso de epígrafe, el Comisionado del PPD presentó su reclamo luego de finalizado el escrutinio general y de adjudicada la controversia del municipio de Lares. El peticionario permitió que transcurrieran veinticinco (25) días desde que tuvo conocimiento del dictamen en el caso del municipio de Lares hasta que solicitó la adjudicación ante el Pleno de la Comisión de las papeletas del Precinto 052 del municipio de Isabela. En su recurso, adujo que, el asunto estuvo ante la consideración de la CEE desde el 6 de diciembre de 2024 y que esta no lo atendió hasta enero de 2025. Lo anterior es incorrecto, dado que el propio foro recurrido concluyó en su *Sentencia* que, de la prueba documental presentada, el asunto no fue elevado al Pleno de la Comisión hasta el 15 de enero de 2025.

De igual manera, alegó que el TPI esperó hasta el 21 de enero de 2025 para resolver el caso de *Karla Angleró v. CEE, supra,* y que esto impedía que se adjudicara tardanza. No obstante, el Comisionado del PPD pudo haber elevado el asunto al Pleno de la Comisión tan pronto estos atendieron el asunto del municipio de Lares. La espera al resultado del caso del municipio de Lares demostró que, al ser las controversias idénticas, no era necesario presentar dos casos distintos.

Ante la falta de explicación razonable para su tardanza, el peticionario intentó confundir los hechos y tratar de aparentar que el Pleno de la CEE no lo atendió diligentemente. Dicha falsedad estriba en que esa controversia nunca se presentó al Pleno de la CEE por acuerdo **unánime** de los Comisionados Alternos. Por tanto, la tardía actuación del Comisionado del PPD y su falta de diligencia en solicitar que se contabilizaran las papeletas, es solamente atribuible a su propia dejadez.

En tercer lugar, como adelantamos en la exposición del derecho, en la Sección 4.8 (8) del Manual de Voto Adelantado, *supra,* establece que:

> Luego de este proceso, los (as) Funcionarios (as) de Colegio sacarán las papeletas y procederán a inicialar las mismas en el cuadrante posterior superior izquierdo identificado para estos fines. Luego le pasarán las papeletas a los demás Funcionarios(as) para que la inicialen. **Debe Inicialarse con marcador punta fina negro (tipo "Sharpie") por un mínimo de dos (2) integrantes de la Junta de Colegio. Papeletas que no cumplan con este proceso se considerarán nulas**. (Énfasis nuestro).

Como vemos, el Manual de Voto Adelantado es específico, claro y sin brindar espacio a interpretaciones sobre el requisito de las iniciales de mínimo dos (2) funcionarios de colegio de voto a domicilio, para que las papeletas pudieran ser adjudicadas.

El Comisionado del PPD, argumentó en su escrito que se le coartó el derecho fundamental al voto de los electores. Sin embargo, y contrario a lo que el peticionario adujo, en el caso de autos no se está violando dicho derecho. Precisamente, es todo lo contrario, pues el requisito de iniciales en las papeletas lo que busca es certificar que los electores que emitieron sus votos estaban calificados para hacerlo y que dichos votos estaban calificados y fueron emitidos ante la junta del balance electoral.

No cabe duda de que, en el caso de marras, las papeletas no podían ser adjudicadas. Esto, debido a que las mismas no cumplieron con los requisitos del ordenamiento vigente que garantizaba que los votos fueron emitidos válidamente, en cumplimiento con el poder de fiscalización que ofrece el balance electoral en aras de velar la transparencia de los procesos electorales.

Es por todo lo anterior que, el primer error no fue cometido y la determinación del foro recurrido es correcta, por lo cual, procede su confirmación.

El peticionario, en su segundo señalamiento de error, adujo que el TPI erró al aplicar al adjudicarle temeridad y consecuentemente, haber impuesto honorarios de abogados a favor de la CEE. No le asiste la razón, veamos.

Según la Regla 44.1 (d) de las de Procedimiento Civil, *supra*, dispone que:

> (d) Honorarios de abogado – En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso de que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

En nuestro ordenamiento, la concesión de honorarios de abogado depende de que el juzgador determine que una parte o su abogado actuó con temeridad o frivolidad[50]. Se entiende que una de las partes o su representante legal actúa temerariamente al dilatar los procesos ya instados, crear gestiones evitables, o interponer pleitos frívolos que obliguen a la otra parte a incurrir en gastos innecesarios[51].

**La determinación de temeridad o frivolidad descansa en la discreción del tribunal**[52]. **Por ende, los tribunales apelativos solo intervendrán con dicha determinación cuando surja un abuso de discreción**[53]. Ahora bien, determinada la existencia de temeridad, la imposición de honorarios de abogado es mandatoria[54].

No obstante, no procede la imposición del pago de honorarios de abogado en las siguientes circunstancias: (1) cuando se plantean asuntos complejos y novedosos; (2) cuando se actúa acorde con una apreciación errónea del derecho y no existen precedentes

---

[50] *PR Fast Ferries et al. v. AAPP, supra.*
[51] *Pérez Rodríguez v. López Rodríguez et al.*, *supra*, pág. 193.
[52] *SLG González-Figueroa v. SLG et al.*, *supra*, pág. 150.
[53] *Íd.*
[54] *Pérez Rodríguez v. López Rodríguez et al.*, *supra*, a las págs. 192-193.

vinculantes sobre el asunto, o (3) cuando exista una discrepancia genuina en cuanto al derecho aplicable a los hechos del caso[55]. En estas situaciones, la temeridad es inexistente[56].

A la luz de la norma jurisprudencial aludida, concluimos que el peticionario no nos colocó en posición de determinar que el TPI abusó de su discreción, ni surge del expediente ante nuestra consideración indicio de ello. Tampoco, identificamos de los autos, las circunstancias antes mencionadas para que no procedan la imposición del pago de honorarios. En vista de lo anterior, nos corresponde abstenernos de intervenir con la determinación discrecional del foro *a quo*.

## IV.

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, ***expedimos* el auto de *certiorari* y *confirmamos* la totalidad de la *Sentencia*** recurrida emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan.

**Notifíquese inmediatamente**.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Adames Soto disiente sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[55] *SLG González-Figueroa v. SLG et al.*, *supra*, a la pág. 149.
[56] *VS PR, LLC v. Drift-Wind, supra*, pág. 277.